[939 NYS2d 42]

In the Matter of New York Skyline, Inc., et al., Appellants, v City of New York et al., Respondents.

First Department, February 23, 2012

**APPEARANCES OF COUNSEL**

*Gibson, Dunn & Crutcher LLP*, New York City (*Randy M. Mastro, Jennifer H. Rearden, Akiva Shapiro, Seema Gupta* and *Matthew W. Knox* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Elizabeth I. Freedman, Francis F. Caputo, Mark Muschenheim* and *Melanie V. Sadok* of counsel), for respondents.

**OPINION OF THE COURT**

RICHTER, J.

In this appeal, we are asked to decide whether the sale on public sidewalks of admission tickets to New York Skyride, a simulated helicopter trip around New York City, requires a general vendor license under sections 20-452 and 20-453 of the Administrative Code of the City of New York. We hold that because neither the Skyride experience nor the admission tickets constitutes goods or services, a general vendor license is not required.

Petitioner New York Skyline, Inc. (Skyline) is an entertainment company that created and manages the New York Skyride, a simulated helicopter experience. The Skyride experience, which takes place on the second floor of the Empire State Building, includes a brief lecture about the Empire State Building followed by a 15-minute film narrated by actor Kevin Bacon. The film, which features music and special effects, takes visitors on a virtual helicopter ride over New York City and its landmarks.

Skyline has been operating Skyride since 1994, and currently employs 110 people, including 40 ticket agents; the company also independently contracts with another 27 ticket agents. Since 2003, these agents have marketed and sold tickets to Skyride on public sidewalks near the Empire State Building. The agents process the sales using small handheld devices that charge the customers' credit cards and print the tickets. Approximately 60% of Skyline's ticket sales comes from selling tickets on the sidewalks.

In April 2011, respondent New York City Police Department (NYPD) started issuing summonses to Skyline's agents for selling tickets on the public sidewalks without a general vendor license, purportedly in violation of section 20-453 of the Administrative Code. General vendor licenses are administered by the New York City Department of Consumer Affairs (DCA). According to the DCA Web site, the maximum number of licenses issued to nonveterans is limited to 853, and the waiting list is currently closed.[1] Thus, if the statute is enforced against the ticket agents, Skyline would be unable to obtain a vending license. Skyline maintains that if it is required to permanently suspend street sales, it will be forced out of business.

At first, NYPD issued summonses that were returnable at the offices of respondent New York City Environmental Control Board (ECB), the agency that adjudicates violations of the general vending laws. In June 2011, NYPD escalated its enforcement strategy, and began arresting alleged violators, requiring them to appear in criminal court. Skyline alleges that 14 notices of violations or summonses have been issued and six ticket agents, including petitioner Calaif Parks, have been arrested for selling tickets without a general vendor license.

Petitioners commenced a CPLR article 78 proceeding against respondents City of New York, NYPD, ECB and various city officials seeking to enjoin them from enforcing the general vending statutes against Skyline's ticket agents. Petitioners asserted causes of action alleging that: (1) Administrative Code §§ 20-452 and 20-453, which require a "general vendor" to be licensed, do not apply to Skyline's ticket agents because they are not selling "goods or services"; (2) the enforcement of the general vending statutes against the ticket agents constitutes an impermissible limitation on protected expressive activity and thus violates the free speech protections of the State and Federal Constitutions; and (3) the City's and NYPD's enforcement activity is the result of improper influence by Skyline's landlord, and thus constitutes an abuse of discretion.[2] The petition seeks, inter alia, a judgment declaring that: (1) the ticket agents' sales of admission tickets to Skyride on the public sidewalks do not qualify them as general vendors under Administrative Code § 20-452

---

1. There is no waiting list for veterans and their surviving spouses or domestic partners, who are currently eligible to apply for a license.

2. Specifically, petitioners allege that the recent crackdown is the result of influence by its landlord, who is alleged to be pursuing a campaign to force Skyline out of the building to make way for a more upscale tenant.

(b); and (2) the ticket agents do not require a general vendor license under Administrative Code § 20-453.

In a judgment entered October 17, 2011, Supreme Court denied the petition and dismissed the proceeding (2011 NY Slip Op 32548[U] [2011]). The court found that respondents' determination that Skyline's agents require a general vendor license was rational, and that the sale of tickets to Skyride is the type of conduct that could be regulated by the general vending laws. The court also rejected petitioners' constitutional and improper influence claims. We now reverse and conclude that the sale of admission tickets to Skyride on a public sidewalk does not require a general vendor license under the Administrative Code.

Administrative Code § 20-453 provides, in relevant part, that "[i]t shall be unlawful for any individual to act as a general vendor without having first obtained a license."[3] A "general vendor" is defined as "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, *goods or services* . . . in a public space" (Administrative Code § 20-452 [b] [emphasis added]). Thus, the statute makes clear that a vendor does not need a license unless the products being sold are either "goods" or "services."

Respondents do not argue that the Skyline admission tickets themselves constitute "goods" that come within reach of the statute. Indeed, any such argument would be unavailing. An admission ticket to an entertainment event is not a commodity in its own right, but is merely a license to enter the event (*see Aaron v Ward*, 203 NY 351, 355 [1911] [ticket for admission to a place of public amusement is a license]; *Impastato v Hellman Enters.*, 147 AD2d 788, 789 [1989] [same]; *People ex rel. Zvirin v Roxy Theatre, Inc.*, 8 NYS2d 92, 98 [Magistrates' Ct 1938] [admission tickets to a theater are not merchandise]).

Instead, respondents argue that Skyline's agents are selling a "service," namely the entertainment provided by the Skyride experience. Thus, the critical inquiry here is whether the Skyride experience is a "service." When interpreting a statute, it is fundamental that a court "should attempt to effectuate the intent of the Legislature" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [internal quotation marks omitted]). Since "the clearest indicator of legislative intent is

**3.** A person violating section 20-453 is guilty of a misdemeanor and is subject to a fine of between $250 and $1,000, possible imprisonment of up to three months, or both (Administrative Code § 20-472).

the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*id.*; *see Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460 [2002] ["in all cases requiring statutory construction, we begin with an examination of the statute's plain meaning"]).

Because the statute does not define the term "service," it should be construed in accordance with its common, everyday meaning (*see Matter of Manhattan Cable TV Servs., Div. of Sterling Info. Servs. v Freyberg*, 49 NY2d 868, 869 [1980]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 232). As a matter of common parlance, one would not say that the Skyride experience is a "service" (*see Roxy Theatre*, 8 NYS2d at 98 ["A theatre does not . . . render service"]). For instance, a sports fan does not refer to a ball game as being a "service." Similarly, music lovers do not talk about the "service" they received when listening to a concert. Nor do theatergoers refer to getting a "service" when they attend a play or musical.

In arguing that Skyline provides a "service," respondents present a strained and unnatural construction of that term. When one thinks of a "service," as that word is ordinarily used, things like haircuts, home repair, house cleaning and car washes come to mind. Skyride is more appropriately characterized as a form of entertainment. "Entertainment" is defined as, inter alia, "a public performance designed to divert or amuse" (Webster's Third New International Dictionary, Unabridged [2002]). That is precisely what Skyride is—visitors are treated to a film featuring music, special effects and a simulated helicopter ride over the city.

Had the City Council intended to include "entertainment" within the reach of the general vending laws, it would have explicitly included that term in the statute. In fact, other state and local statutes show that lawmakers have made a distinction between the terms "service" and "entertainment." For example, Administrative Code § 28-502.1 defines "Outdoor Advertising Business" as the business of selling space on signs for advertising purposes, "whether such advertising directs attention to a business, profession, commodity, service *or* entertainment" (emphasis added). Likewise, "Contribution" is defined in Executive Law § 171-a as "[t]he promise or grant of any money or property . . . , whether or not in combination with the sale of goods, services, entertainment or any other thing of value." Thus, the terms "service" and "entertainment" are enumer-

ated as two separate concepts (*see also* 19 RCNY 14-08 [a] [1] *and* [3] [separately referring to "providing goods or services," and "(o)perating a theater or other entertainment business"]; 53 RCNY 1-16 [b] [5] [defining "gift" as "money, service . . . entertainment"]).

In urging this Court to interpret the statute as encompassing Skyline's ticket sales, respondents point to certain statements of legislative intent in which the City Council identified street congestion as one of the justifications for enacting the laws (*see e.g.* Local Law No. 50 [1979] of City of NY § 1). Street congestion is not the sole reason these laws were passed; the City Council also pointed to unlicensed vendors' failing to pay taxes, selling defective or counterfeit merchandise, and siphoning off business from taxpaying commercial establishments (*see e.g.* Local Law No. 40 [1988] of City of NY § 1). There is no evidence in the record, nor do respondents argue, that any of these considerations is applicable to Skyline's ticket sales.

The issue on this appeal is not whether preventing the sale of Skyride tickets might help in reducing sidewalk congestion.[4] The question is whether Skyline's agents are selling "goods or services." The expressed legislative intent does little to aid in that inquiry. Merely because one of the legislative purposes was to control street crowding does not mean that the City Council intended to include the sale of tickets to an entertainment event within the ambit of the statute if that sales process impacted the flow of pedestrian traffic on the sidewalk. We emphasize, however, that our holding is limited to the issue of whether Skyline ticket agents are general vendors under Administrative Code §§ 20-452 and 20-453, and does not preclude respondents from enforcing any other statutes that might be applicable to Skyline's ticket sales, if the agents are, in fact, obstructing sidewalk traffic.

Finally, in construing this statute, respondents urge us to defer to NYPD's interpretation of the statute that the sale of Skyride tickets requires a general vendor license. However, no deference is due because where, as here, "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270,

---

4. We note that the parties point to conflicting evidence as to whether Skyline's ticket agents are causing significant street crowding.

285 [2009] [internal quotation marks omitted]). Since no fair reading of the statute leads to the conclusion that the Skyride experience, or the tickets themselves, constitute "goods or services," Administrative Code §§ 20-452 and 20-453 do not apply. In light of this determination, petitioners' alternative bases for relief need not be addressed.

Accordingly, the judgment of the Supreme Court, New York County (Donna M. Mills, J.), entered October 17, 2011, denying the petition and dismissing the proceeding, should be reversed, on the law, without costs, the judgment vacated, and the petition granted to the extent of annulling and vacating respondents' determinations as to the applicability of Administrative Code of the City of New York §§ 20-452 and 20-453 to the sale of tickets to Skyride, and declaring that New York Skyline's ticket agents' sales of admission tickets to Skyride on the public sidewalks do not qualify them as "general vendor[s]," as defined by Administrative Code § 20-452 (b), and that New York Skyline's ticket agents do not require a general vendor license to sell Skyride tickets under Administrative Code § 20-453. The Clerk is directed to enter judgment accordingly.

ANDRIAS, J.P., SAXE, ACOSTA, FREEDMAN and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County (Donna M. Mills, J.), entered October 17, 2011, reversed, on the law, without costs, the judgment vacated, and the petition granted to the extent of annulling and vacating respondents' determinations as to the applicability of Administrative Code of the City of New York §§ 20-452 and 20-453 to the sale of tickets to Skyride, and declaring that New York Skyline's ticket agents' sales of admission tickets to Skyride on the public sidewalks do not qualify them as "general vendor[s]," as defined by Administrative Code § 20-452 (b), and that New York Skyline's ticket agents do not require a general vendor license to sell Skyride tickets under Administrative Code § 20-453. The Clerk is directed to enter judgment accordingly.