[993 NYS2d 706]

In the Matter of RAM I LLC, Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Appellants.

First Department, October 7, 2014

APPEARANCES OF COUNSEL

*Gary R. Connor*, New York City (*Martin B. Schneider* of counsel), for New York State Division of Housing and Community Renewal, appellant.

*Cozen O'Connor*, New York City (*Menachem J. Kastner* and *Ally Hack* of counsel), for Phyllis Berk, appellant.

*Graubard Miller*, New York City (*Lawrence D. Bernfeld*, *Peter A. Schwarz* and *Neil P. Ritter* of counsel), for respondent.

### OPINION OF THE COURT

SWEENY, J.

The issue in this case is whether an apartment that was subject to rent control prior to receiving J-51 tax benefits remains exempt from luxury deregulation by virtue of its rent-controlled status after the J-51 benefits expire, notwithstanding the fact that it is otherwise qualified for luxury deregulation. For the following reasons, we hold that the present statutory scheme requires it to remain exempt.

The apartment at issue in this case was, at all times relevant to this proceeding, subject to the New York City Rent and Rehabilitation Law (Administrative Code of City of NY) § 26-401 *et seq.* (Rent Control Law, hereinafter RCL). Respondent tenant has lived in that apartment since 1958. Petitioner RAM I LLC is the owner of the cooperative shares allocated to the apartment. In 1994, RAM (owner) obtained "J-51" tax benefits valued at slightly over $8,000.* The apartment continued to be rent-controlled while the benefits were in effect, and remained rent-controlled after the benefits expired in tax year 2004/2005. It is uncontested that, pursuant to Administrative Code § 26-403 (e) (2) (j), while the building was receiving benefits, it was exempt from luxury deregulation.

In June 2008, the owner filed with respondent New York State Division of Housing and Community Renewal (DHCR) a petition for luxury deregulation. It is undisputed that the requisite thresholds for total household income and apartment rent were met at the time the petition was filed. In November 2010, DHCR's Rent Administrator issued an order deregulating the apartment. The tenant then filed a petition for administrative review (PAR) challenging the deregulation order.

In October 2011, DHCR issued an order that granted the tenant's PAR, revoked the Rent Administrator's deregulation order and denied the owner's deregulation petition.

Petitioner thereafter commenced a CPLR article 78 proceeding seeking to annul the agency's determination. DHCR and the tenant both moved to dismiss. On May 21, 2012, the IAS court issued an order granting the petition, revoking DHCR's order and denying both motions to dismiss (2012 NY Slip Op 33680[U] [2012]). This appeal followed.

In *Matter of Schiffren v Lawlor* (101 AD3d 456, 457 [1st Dept 2012]), a case where the facts are essentially the same as those here, we held that luxury deregulation was available to the owner upon the expiration of J-51 benefits. A significant difference, however, is the fact that the apartment in *Schiffren* was regulated, before, during, and after the receipt of J-51 benefits, under the Rent Stabilization Law (RSL) rather than, as here, the RCL. Although the regulations are similar, the RCL and

---

* "J-51" tax benefits, deriving its name from the prior Administrative Code section, and now codified at § 11-243 of the Administrative Code, are authorized by Real Property Tax Law § 489, and permit localities to grant real estate tax exemptions and tax abatements for certain alterations and improvements made to qualifying multiple dwellings.

RSL represent two distinct statutory schemes. Petitioner argues that *Schiffren* dictates the same result here, while DHCR contends that a different outcome is warranted based on distinctions between the RSL and the RCL.

■ At the outset, we note that the question before us turns purely on statutory interpretation. As such, we need not defer to the agency's interpretation of the statutes in question, as we are not called upon "to interpret a statute where 'specialized knowledge and understanding of underlying operational practices or . . . an evaluation of factual data and inferences to be drawn therefrom' is at stake" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 285 [2009], quoting *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]; *see also Schiffren*, 101 AD3d at 457).

The starting point for statutory interpretation must be the language of the statute itself. Administrative Code § 26-403 (e) (2) (j) sets the parameters of luxury deregulation for rent-controlled apartments. It first excludes from the definition of "housing accommodation" (i.e., units subject to rent control) apartments that meet certain thresholds for tenant income and maximum rent. These thresholds were met here. Importantly, however, the statute then creates an exemption from this exclusion from rent control: "Provided however, that this exclusion shall not apply to housing accommodations which *became or become subject to this law* by virtue of receiving tax benefits pursuant to section four hundred eighty-nine of the real property tax law" (the J-51 tax benefits) (*id.* [emphasis added]).

The parties agree that this provision does not explicitly prescribe any time limitation for the applicability of the exemption. Rather, it simply provides that a housing unit qualifies for the exemption from luxury deregulation when it became subject to "this law" by receiving J-51 benefits (the "became or become clause").

■ That this apartment was subject to rent control before receiving J-51 benefits does not prevent it from "becoming" subject to regulation upon receiving J-51 benefits. As the *Roberts* court noted, albeit in the context of rent stabilization, an apartment can become subject to rent regulation for a second time when the building receives J-51 benefits (*Roberts*, 13 NY3d at 286).

The luxury deregulation provisions of the RSL (Administrative Code § 26-504.1) and RCL (Administrative Code § 26-403

[e] [2] [j]) are essentially the same. Both provide that luxury deregulation "shall not apply to housing accommodations which became or become subject to this law" by virtue of receiving J-51 benefits (*id.*). However, the RSL contains an additional provision, Administrative Code § 26-504 (c), that addresses the regulation status of a unit upon the expiration of J-51 benefits where, inter alia, the unit was rent stabilized before receipt of the benefits. That section provides that

> "if such dwelling unit would have been subject to [the RSL] . . . in the absence of [J-51 benefits], such dwelling unit shall, upon the expiration of [J-51] benefits, continue to be subject to [the RSL] . . . to the same extent and in the same manner as if [J-51 benefits] had never applied thereto" (*id.*).

In *Schiffren*, we referenced the "plain language" of this provision and concluded that, upon the expiration of J-51 benefits, the apartment "revert[ed] to pre-J-51-benefit rent-regulation status," which "includes the right of an owner to seek luxury deregulation in appropriate cases" (*Schiffren*, 101 AD3d at 457).

Administrative Code § 26-504 (c), which clearly mandates the resumption of the rent-stabilized status the unit was subject to prior to receiving J-51 benefits, has no counterpart in the RCL.

The owner argues that the rationale of *Schiffren* should also apply to apartments subject to rent control, because, inter alia, to hold otherwise would be inconsistent with the purpose of the luxury deregulation law, which attempted to "restore some rationality to a system which provides the bulk of its benefits to high income tenants" (*Noto v Bedford Apts. Co.*, 21 AD3d 762, 765 [1st Dept 2005] [internal quotations marks omitted]). We are not unmindful that the legislative history indicates a preference not to have people who can easily afford market value rental property inhabit rent-regulated housing. However, this history does not offer sufficient evidence to alter the unambiguous language of Administrative Code § 26-403 (e) (2) (j). To do so would require us to import new language into the RCL and "give it a meaning not otherwise found therein" (McKinney's Cons Laws of NY, Book 1, Statutes § 94, Comment at 190; *see Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 104-105 [1997]). Indeed, "where the language of a statute is clear[,] there is little room to 'add to or take away from that meaning' " (*Jones v Bill*, 10 NY3d 550, 555 [2008], quoting *Tompkins v Hunter*, 149 NY 117, 123 [1896]). If the application of such long-established principles of statutory construction produces

"an undesirable result, the problem is one to be addressed by the Legislature" (*Chazon, LLC v Maugenest*, 19 NY3d 410, 416 [2012]).

Therefore, applying the plain language of Administrative Code § 26-403 (e) (2) (j), we find that the tenant's rent-controlled apartment continued to be exempt from luxury deregulation after the J-51 benefits expired. Pursuant to the statute, the unit became subject to rent control "for a second time" (*Roberts*, 13 NY3d at 286) upon the advent of J-51 benefits, and nothing in section 26-403 (e) (2) (j) restored the availability of luxury deregulation after the expiration of J-51 benefits.

Accordingly, the order of the Supreme Court, New York County (Geoffrey D. Wright, J.), entered June 4, 2012, which, inter alia, granted the article 78 petition of RAM I LLC seeking annulment of DHCR's determination, dated October 26, 2011, that the subject apartment was exempt from high-rent/high-income rent deregulation (luxury deregulation) pursuant to Administrative Code of the City of NY § 26-403 (e) (2) (j), should be reversed, on the law, without costs, the petition denied, and the proceeding dismissed. The Clerk is directed to enter judgment accordingly.

RENWICK, ANDRIAS, RICHTER and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered June 4, 2012, reversed, on the law, without costs, the petition denied and the proceeding dismissed. The Clerk is directed to enter judgment accordingly.