■ In the Matter of DANNY ROSSI, Respondent, v NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Appellant. In the Matter of ELIZABETH A. ROSSI, Respondent, v NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Appellant. In the Matter of RABAH BELKEBIR, Respondent, v NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Appellant. In the Matter of MARTIN DIAZ, Respondent, v NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, Appellant. [8 NYS3d 25]—

Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered March 25, 2013, granting petitioner Danny Rossi's petition to annul the determination of the New York City Environmental Control Board (ECB), dated May 31, 2012, which sustained three notices of violation of Rules of City of New York Department of Parks and Recreation (56 RCNY) § 1-03 (c) (1), affirmed, without costs. Order and judgment (one paper), same court and Justice, entered March 25, 2013, granting petitioner Elizabeth A. Rossi's petition to annul the determination of ECB, dated May 31, 2012, which sustained two notices of violation of 56 RCNY 1-03 (c) (1), modified, on the law, to deny the petition with respect to the notice of violation premised upon General Business Law § 35-a (7) (i), and otherwise affirmed, without costs. Order and judgment (one paper), same court and Justice, entered March 25, 2013, granting petitioner Rabah Belkebir's petition to annul the determination of ECB, dated May 31, 2012, which sustained one notice of violation of 56 RCNY 1-03 (c) (1), affirmed, without costs. Order and judgment (one paper), same court and Justice, entered March 25, 2013, granting petitioner Martin Diaz's petition to annul the determination of ECB, dated May 31, 2012, which sustained 11 notices of violation of 56 RCNY 1-03 (c) (1), modified, on the law, to deny the petition with respect to the two notices of violation premised upon General Business Law § 35-a (7) (i), and otherwise affirmed, without costs.

In these related CPLR article 78 proceedings, petitioners, who are disabled veterans holding mobile food vending licenses, challenge notices of violation issued by respondent New York City Department of Parks and Recreation (DPR) for failure to comply with Parks Department officers' directives to move their food carts. Most of the notices of violation allege

that petitioners were asked to move their carts because General Business Law § 35-a (3) provides that only two street vendors holding "specialized vending licenses" (SVLs) may vend on each "block face." SVLs are issued to disabled veterans by way of a priority system based upon the veteran's date of application (General Business Law § 35-a [1] [a], [b]). When three or more SVL holders attempt to vend on the same "block face," the two SVL holders with higher priority have the exclusive right to vend, and any other SVL holder vending on that "block face" is deemed to be vending without having obtained a license (General Business Law § 35-a [3]). Since other SVL holders with higher priority were vending on the dates in question, the Parks Department officers asked petitioners to move, and issued the notices of violation when they refused. Separate from the "block face" issue, two of the notices of violation issued to petitioner Diaz, and one issued to petitioner Elizabeth A. Rossi, allege that they refused to move after being told that their food carts violated certain footage restrictions contained in General Business Law § 35-a (7) (i).

General Business Law § 35-a governs the issuance of SVLs to disabled veterans who "hawk, peddle, vend and sell goods, wares or merchandise or solicit trade" (General Business Law § 35-a [1] [a]). Petitioners argue that this statute does not apply to food vendors. The central issue presented in this appeal is whether the phrase "goods, wares or merchandise" encompasses food. We conclude that it does. "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Matter of State of New York v John S.*, 23 NY3d 326, 340 [2014] [internal quotation marks omitted]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Because the terms "goods" and "merchandise" are not defined in General Business Law § 35-a, they should be construed in accordance with their common, everyday meaning (*Matter of New York Skyline, Inc. v City of New York*, 94 AD3d 23, 27 [1st Dept 2012], *lv denied* 19 NY3d 809 [2012]).

The word "goods" is broadly defined as "something manufactured or produced for sale" (Merriam-Webster's Collegiate Dictionary 539 [11th ed 2003]). Likewise, "merchandise" is defined as "the commodities or goods that are bought and sold in business" (*id.* at 776). As a matter of common parlance, the term "goods" plainly includes food. For example, one often refers to

canned foods as "canned goods," and baked items as "baked goods." Thus, food products such as those sold by petitioners fall within the common, everyday meaning of "goods" and "merchandise" (*see Monroy v City of New York*, 95 AD3d 535 [1st Dept 2012] [food is "merchandise" as that term is used in city regulation governing the sale of merchandise]). If the legislature had intended to exclude food from the purview of General Business Law § 35-a, it could have expressly done so, as it did, for example, in General Municipal Law § 85-a [explicitly excepting "food products" from the phrase "goods, wares or merchandise"]). Its failure to have made such an exclusion in General Business Law § 35-a indicates an intention to include food within the broad reach of the statute.[1]

The phrase "goods, wares or merchandise" is drawn verbatim from General Business Law § 35-a's companion statute, General Business Law § 32, which governs the rights of veterans to vend. That statute, from its inception, has been understood to apply to all categories of vendors, including food vendors (*see e.g. City of Buffalo v Linsman*, 113 App Div 584 [4th Dept 1906] [sale of vegetables]; *Matter of Sharpe v NYC Dep't of Health & Mental Hygiene*, 2008 NY Slip Op 32094[U] [Sup Ct, NY County 2008] [mobile food vending]; *People v Mann*, 113 Misc 2d 980 [Dist Ct, Suffolk County 1982] [sale of hot dogs]; *People v Gilbert*, 68 Misc 48 [County Ct, Otsego County 1910] [sale of peanuts and popcorn]; *see also Good Humor Corp. v City of New York*, 290 NY 312 [1943] [involving sale of ice cream and local law regulating sale of "goods, wares or merchandise"]). It would be incongruous for the legislature to have viewed food as "goods, wares or merchandise" for purposes of General Business Law § 32, but not for General Business Law § 35-a.

It is axiomatic that "a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]). A review of the myriad provisions in General Business Law § 35-a makes clear that the statute was intended to, inter alia, combat sidewalk congestion and promote public safety in areas where vending is taking place. For example, vending is prohibited on sidewalks where the pedestrian path is less than 10 feet wide (General Business Law § 35-a [3]). There are also restrictions on, inter alia, vending within bus stops and taxi stands, and near subway entrances, driveways, disabled access ramps and entrances to stores (General Business Law § 35-a [7] [h], [l] [i], [viii]). Other parts of

---

1. There is nothing in the legislative history to indicate that the legislature intended to exclude food vending.

the statute prohibit interference with fire hydrants and traffic barriers, use of oil and gas powered equipment, and vending over subway grates, ventilation grills and manholes (General Business Law § 35-a [7] [g], [l] [iii], [v]). The congestion and safety concerns underlying these provisions pertain to all vendors regardless of what they are selling, and there is no rational reason why the legislature would intend for these restrictions to apply to general vendors but not food vendors.

The passing reference to food vendors in General Business Law § 35-a (11) fails to demonstrate that the legislature did not intend food vending to be covered under the statute. That subdivision, which provides for certain caps on vending by disabled veterans, is merely an acknowledgment that there are different types of vendors—namely "food, general [and] vendors of written matter" (General Business Law § 35-a [11]), and sheds no light on the central question of whether food is "goods" or "merchandise." Likewise, the fact that two different agencies regulate street vending in New York City does not mean that the state legislature intended to carve out food vending from General Business Law § 35-a.

Having concluded that the vending limitations contained in General Business Law § 35-a apply to the sale of food, we turn to the remaining issues presented in this proceeding. Petitioners were vending in front of the Metropolitan Museum of Art, which is abutted by a five-block span of sidewalk on the west side of Fifth Avenue extending from the side streets of East 79th Street through East 84th Street. On the east side of Fifth Avenue, this span comprises five distinct blocks separated by the above side streets, each of which forms a T-junction with Fifth Avenue. Most of the notices of violation were issued because petitioners had allegedly violated the provision in General Business Law § 35-a (3) allowing no more than two SVL holders to vend on a given "block face."

DPR and ECB take the position that the entire span of sidewalk in front of the museum comprises a single "block face" for purposes of General Business Law § 35-a (3). We disagree. The regulations enacted with respect to this statute define "block face" as "the area of sidewalk spanning from one intersection to the next" (Rules of City of NY Dept of Consumer Affairs [6 RCNY] § 2-315 [a] [1]). The term "intersection" is defined in the Vehicle and Traffic Law as, inter alia, "[t]he area embraced within the prolongation or connection of the lateral curb lines . . . of two highways which join one another at, or approximately at, right angles" (Vehicle and Traffic Law § 120 [a]). Likewise, the New York City Department of Transporta-

tion's regulations define "intersection" as "the area contained within the grid created by extending the curblines of two or more streets at the point at which they cross each other" (Rules of City of NY Dept of Transportation [34 RCNY] § 2-01). Because the T-junctions formed where Fifth Avenue meets each of the streets from East 79th through East 84th Streets are all separate intersections, the multi-block sidewalk span in front of the museum is not a single "block face." Thus, in light of the provisions of the Vehicle and Traffic Law and RCNY, ECB's interpretation of the term "block face" was an error of law. Accordingly, ECB erroneously sustained those notices of violation based on the restriction of two SVL holders per "block face."[2]

Contrary to the dissent's view, the "block face" issue, which was fully briefed in the CPLR article 78 proceedings below, is properly before us. CPLR 7804 (g) provides, in relevant part, that "when the [article 78] proceeding comes before it, whether by appeal or transfer, the appellate division shall dispose of *all* issues in the proceeding" (emphasis added). Thus, we are empowered to resolve all issues raised in the article 78 petitions, including the "block face" issue (*see Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174 [1969]; *see also* Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7804:8 ["To preserve judicial economy, . . . 7804 (g) has been interpreted as a direction to the Appellate Division to consider all of the questions that are presented in an Article 78 proceeding no matter how the case arrived at its doorstep"]). We disagree with the dissent's position that we should defer to ECB's construction of the term "block face." The issue before us turns solely on statutory interpretation, and no such deference is owed since we are not interpreting a statute "where specialized knowledge and understanding of underlying operational practices" or "an evaluation of factual data and inferences to be drawn therefrom is at stake" (*Matter of RAM I LLC v New York State Div. of Hous. & Community Renewal*, 123 AD3d 102, 105 [1st Dept 2014] [internal quotation marks omitted]).

ECB properly upheld those notices of violation issued to petitioners Diaz and Elizabeth A. Rossi premised upon General Business Law § 35-a (7) (i). Under that provision, SVL holders are prohibited from "occupy[ing] more than eight linear feet of public space parallel to the curb" and "more than three linear

---

2. The dissent's reference to the number of bus stops in front of the museum, an issue not fully developed in the administrative record, has no bearing on the legal issue of whether the sidewalk area in front of the museum constitutes a single "block face."

feet to be measured from the curb to the property line."[3] The sole defense raised in the administrative proceedings to these notices of violation, which have nothing to do with the "block face" issue, was that General Business Law § 35-a does not apply to food vending.[4] In light of our rejection of this defense, no basis exists to vacate these notices of violation. Concur—Moskowitz, DeGrasse, Richter and Kapnick, JJ.

Tom, J.P., dissents in part in a memorandum as follows: I dissent to the extent that the majority reaches matters not briefed by the parties and not reached by Supreme Court, thus providing no basis for review. It is axiomatic that in the absence of an adverse ruling by which a party is aggrieved, no appeal lies (CPLR 5511). Since petitioners have not filed a cross appeal, any administrative rulings adverse to them are likewise not subject to review in respondent's present appeal.

Petitioners are all disabled veterans of the United States Armed Services who operate as mobile food vendors on the sidewalk in front of the Metropolitan Museum of Art in Manhattan. The issue presented by this appeal is whether they were properly charged with violating General Business Law § 35-a (3), which imposes a limit on the number of vendors who may conduct business at a particular location.

These CPLR article 78 proceedings, consolidated for appeal, challenge penalties imposed on petitioners by respondent New York City Department of Parks and Recreation (DPR) and upheld by the Environmental Control Board (ECB or the City) for refusing to leave the sidewalk area fronting the museum to comply with the statutory limit of two such vendors per restricted block face. These density restrictions are prescribed by General Business Law § 35-a, which provides for the issuance of a specialized vending license (SVL) to any honorably discharged veteran who, like petitioners, has a service-related physical disability.

Each petitioner holds a Mobile Food Vendor Full Term License issued by the New York City Department of Health

---

**3.** Although, in general, the provisions of General Business Law § 35-a (7) are not applicable to the area where petitioners were vending, the specific prohibitions contained in General Business Law § 35-a (7) (i) apply to all SVL holders, regardless of where they vend (*see* General Business Law § 35-a [3]).

**4.** In the article 78 petitions, petitioners argued that these size limitations create a disadvantage for disabled veteran food vendors since they purportedly conflict with certain city regulations. We do not reach this issue because it was not raised in the ECB proceedings (*see Matter of 72A Realty Assoc. v New York City Envtl. Control Bd.*, 275 AD2d 284, 286 [1st Dept 2000]).

and Mental Hygiene (DOHMH), which enables the holder to conduct operations as a food vendor. Petitioner Danny Rossi owns and operates his own food vending cart, which meets the agency's specifications and requirements. Since 2007, he has been operating his food cart in front of the Metropolitan Museum of Art on the west side of Fifth Avenue in the vicinity of East 82nd Street. In addition to the cart which he personally operates, Mr. Rossi owns at least two other food vending carts. He employs his adult daughter, petitioner Elizabeth A. Rossi, to operate one and petitioner Martin Diaz to operate the other. The final petitioner, Rabah Belkebir, owns and operates his own food cart at East 79th Street and Fifth Avenue. For each cart owned, Mr. Rossi and Mr. Belkebir hold a Citywide Full Term Mobile Food Vending Permit, also issued by DOHMH, which certifies that a particular cart or vehicle is authorized for use in food vending.

Petitioners were directed to move their food carts because state law provides that only two street vendors holding "specialized vending licenses" may vend on each "block face" (General Business Law § 35-a [3]).[1] DPR construes the five-block uninterrupted stretch of sidewalk on Fifth Avenue fronting the Metropolitan Museum of Art to constitute a single "block face" for purposes of General Business Law § 35-a (3). Since other, more senior (higher priority number) SVL holders were present on each of the dates in question, the Parks Department officers asked the petitioners to move, and issued them notices of violation when they refused.

A brief historical analysis of the relevant statutes is instructive. Article 4 of the General Business Law confers on honorably discharged veterans of this state who procure the necessary license the right to "sell goods, wares or merchandise or solicit trade upon the streets and highways within the county of his or her residence" or within the city wholly embracing that county (General Business Law § 32 [1]). Moreover, municipalities are forbidden to promulgate any local law or regulation that prohibits or interferes with the exercise of such right by licensed veterans who are physically disabled as a result of injuries received during military service (General Business Law § 35). In *Kaswan v Aponte* (160 AD2d 324 [1st Dept 1990], *affg* 142 Misc 2d 298 [Sup Ct, NY County 1989]), this Court upheld the right conferred by section 35, which supersedes and proscribes any local law restricting the right of disabled veterans to engage in hawking or peddling—specifically, in *Kaswan*, a local regulation intended to abate conges-

---

1. The term "block face" is not defined in General Business Law article 4.

tion. In response to our ruling, section 35 was amended to exempt cities with a population of one million or more to permit the exercise of some degree of local regulatory authority over the activities of such vendors (L 1991, ch 687, § 1). Thereafter, the legislature enacted section 35-a, which originally provided for the issuance of restricted location permits to qualifying disabled veterans (L 1995, ch 115, § 3). The statute was re-enacted in 2004 to implement the present licensing system, expressly subjecting licensees to local restrictions on the number of vendors who may operate at a given location under certain specified conditions (L 2004, ch 11, § 1).

The statute subjects the SVL holder to local restrictions on the number of vending carts, vehicles or stands imposed by the locality "[i]n areas where general vending is authorized" (General Business Law § 35-a [2]). It further confers upon the SVL holder the right to vend at times and in locations where vending is otherwise prohibited, with the proviso that no more than two SVL holders may vend on such a "restricted block face" (General Business Law § 35-a [3]). The statute provides for a priority system, based on seniority, to establish which vendors have the right to continue operating when the density limit on the number of vendors per block face is exceeded.

DPR officers issued violations to petitioners for failing to obey directives to move their food carts. In each case, the officers asserted that they instructed the petitioner to move his or her cart because the respective petitioner did not have "priority" on that "block face" (General Business Law § 35-a [1] [b]). The summonses issued to petitioners were the subject of four administrative hearings conducted before the same Administrative Law Judge. Danny Rossi appeared pro se and also acted as the representative of the other three petitioners. The agency was represented by Parks Department Enforcement personnel, Sergeant Asha Harris and Officer Travis Herman.

Mr. Rossi began by noting that the issue of whether an enforcement officer's direction to move a food cart was lawfully issued had been the subject of several prior hearings. He submitted a number of determinations that dismissed the charge of failing to comply with a lawful order of a Parks Department officer, including one concerning Martin Diaz, all of which found that General Business Law § 35-a is inapplicable to food vendors. Mr. Rossi argued that the statute only "applies to general vending" and that "the priority system isn't used in this case." As to any restriction on the number of vendors, Mr. Rossi contended that the location where the carts were being operated is not a restricted area for food vendors.

In support of his argument, he referred to title 17 of the Administrative Code (regulating food vending[2] ) and a listing of streets restricted under that title, which does not include the subject location. He further noted that under Parks Department regulations, the only restriction on the placement of carts is that they be located at least 30 feet from a park entrance, a rule with which he fully complied. In response, Sergeant Harris reminded the ALJ that the violations were issued to petitioners under section 35-a, not the Administrative Code. She then proceeded to explain the priority licensing system.

The ALJ issued four substantially identical decisions dismissing all of the violations against each of the four petitioners and finding that General Business Law § 35-a is inapplicable to food vendors. Thus, the ALJ concluded, petitioners were not subject to the limit of two SVL holders per block face contained in subdivision (3), the directive given to petitioners by DPR officers to remove their food carts from the sidewalk in front of the Metropolitan Museum of Art was unlawful, and it could not serve as a basis for issuance of a violation for failure to comply with the officer's "lawful direction or command" (Rules of City of NY Dept of Parks and Recreation [56 RCNY] § 1-03 [c] [1]).

The DPR pursued an administrative appeal before the ECB, which reversed the ALJ's findings. In four determinations essentially identical in substance and issued on the same day, the Board found that the restriction on the number of vendors contained in General Business Law § 35-a applies to food vendors and general vendors alike. While no definition of the terms "goods, wares or merchandise" appears in section 35-a or elsewhere in the New York State Consolidated Laws, the Board observed that the dictionary definition of "goods" includes "food products," such as "baked goods" (citing Webster's Third New International Dictionary [1986]), and that food products are among the goods subject to regulation under article 2 of the Uniform Commercial Code. The Board also rejected petitioners' contention that they did not violate the statutory prohibition against more than two SVL holders "vend[ing] simultaneously on the same block face" because, as Danny Rossi had argued, the list of restricted areas issued by DOHMH includes only the east side of Fifth Avenue, not the west side in front of the Metropolitan Museum of Art. The Board instead invoked the local requirement to obtain written permission from the Parks Com-

---

**2.** Presumably Administrative Code § 17-315 (i) requiring written authorization from the Commissioner of Parks to vend within areas under Parks Department jurisdiction.

missioner to vend in areas subject to his supervision (Administrative Code of City of NY § 17-315 [i]) to find that the area fronting the museum from East 79th to East 86th Street constitutes a "restricted block face." Finally, the Board refused to consider Mr. Rossi's argument that an SVL may be used only for general vending, that it requires a general vending license and is labeled "disabled veteran general vendor" as "factual assertions made for the first time on appeal." In reversing the ALJ's determinations, the Board sustained all of the violations against petitioners.

The subject CPLR article 78 proceedings were commenced by notices of petition and petitions verified September 14, 2012. As on the administrative appeal, petitioners argued that food vendors are not regulated by the state statute but, rather, are subject to city regulation by DOHMH under article 17 of the Administrative Code. They further argued that the ECB's finding that the area between East 79th and East 86th Street is a single restricted block face for purposes of the statute is arbitrary and capricious. The City responded that while its licensing provisions have distinguished between general vendors and vendors of food since 1977, state law has never made any such distinction.

In granting the petitions, Supreme Court issued four substantially identical decisions reasoning that only general (non-food) vendors are subject to General Business Law § 35-a, while food vendors are regulated by Administrative Code § 17-301 *et seq.* The court further noted that "[t]he Department of Consumer Affairs, which is charged with issuing general vendor licenses, explicitly excludes food vending from the purview of general vendor licenses" (citing Administrative Code § 20-452 [b]). Because it found section 35-a to be inapplicable to food vendors, the court held that the DPR officers had unlawfully directed petitioners to move their food carts and, thus, petitioners could not be charged with failing to comply with a lawful direction of a Parks Department officer. The court did not reach the question of whether the entire sidewalk area fronting the museum constitutes a single block face for purposes of restricting vending to two specialized vending licensees.

On appeal, the City, argues that while regulation of food vendors is the province of DOHMH, General Business Law § 35-a is not confined to general vendors but applies to all vendors, including food vendors.

In support of their opposing position that the numerical restrictions of section 35-a do not apply to them, petitioners,

appearing pro se, respond first, as they argued before the ALJ, that the Department of Consumer Affairs (DCA) has no authority to regulate their operations, which fall under the aegis of DOHMH. Second, they point out that none of them has been required to obtain an SVL in order to conduct operations as a food vendor and that a general vending license does not permit the vending of food.[3] Finally, since food is not mentioned among the wares covered by General Business Law § 35-a, they contend that the statute does not apply to vendors of food.

As the City frames it, the issue before us is whether the statutory reference to those holding a "license to hawk, peddle, vend and sell goods, wares or merchandise or solicit trade upon the streets and highways" (General Business Law § 35-a [1] [a]) includes food vendors within its purview or, more particularly, whether the statute includes food among the categories of "goods, wares or merchandise" sold by SVL holders. The City argues that the dictionary definition of "goods" is particularly broad and that article 2 of the Uniform Commercial Code, which applies to transactions in goods, is construed to include food items (*see e.g. Frigaliment Importing Co. v B.N.S. Intl. Sales Corp.*, 190 F Supp 116 [SD NY 1960] [chicken]; *Feld v Levy & Sons*, 37 NY2d 466 [1975] [bread crumbs]).

It may well be that, as the City contends, General Business Law § 35-a can be read to encompass food vendors. It is broadly drafted and nowhere expressly exempts the vending of food from its ambit (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [legislative intent is best reflected by the statutory language]). For the purpose of this appeal, it may be assumed, without deciding, that the statute's scope is as broad as the City suggests. It is unnecessary to decide the issue because, even accepting the City's interpretation, the statute does not afford a predicate for issuance of the subject violations to petitioners under the particular facts of this case.

Preoccupation with state law detracts from the purpose of CPLR article 78 review. The narrower question to be decided by this Court is whether Supreme Court correctly found that the ECB's administrative order overturning the ALJ's hearing determination was " 'arbitrary and capricious, affected by error of law or an abuse of discretion' " under CPLR 7803 (3) (*Matter of Castanon v Franco*, 290 AD2d 293, 293 [1st Dept 2002], quoting *Matter of Kaphan v DeBuono*, 268 AD2d 909, 911 [3d Dept

---

3. General Business Law § 35-a (5) provides for a color coded identification to accompany an SVL, which shall be displayed by the SVL holder, and current DCA rules provide for the assignment of a priority rank to the vendor.

2000]).[4] The subject violations were issued pursuant to General Business Law § 35-a (3), which provides in relevant part: "Specialized vending licenses issued pursuant to this section shall authorize the holders thereof to vend on block faces . . . on the days and at the times when other vending businesses have been prohibited on such block faces pursuant to any local law, ordinance, by-law, rule or regulation. Not more than two such specialized vending licenses shall be authorized pursuant to this subdivision per restricted block face." Where, as here, a question of pure statutory interpretation is presented, the courts are not obliged to accord deference to the construction of the law espoused by the agency (*see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]).

Whether or not General Business Law § 35-a applies to petitioners, the ECB identified no local provision that otherwise prohibited vending in front of the Metropolitan Museum of Art, thereby implicating the statutory limit of two vendors per block face. Subdivision (2) of the statute subjects qualifying disabled veterans holding SVLs to local restrictions on the placement of vending carts. Subdivision (3) permits such SVL holders to vend "on the days and at the times when other vending businesses have been prohibited on such block faces pursuant to any local law, ordinance, by-law, rule or regulation," with the proviso that "[n]ot more than two such specialized vending licensees shall be authorized pursuant to this subdivision per restricted block face" (General Business Law § 35-a [3]). Thus, even assuming that petitioners are bound by the statute, as the City contends, they must be shown to have been using the status of SVL holder to vend at a time and place "when other vending businesses have been prohibited." Once again, the City identifies no such local prohibition in effect at this location, and the restriction of "not more than two . . . specialized vending licenses per restricted block face" under section 35-a (3) is not implicated.

As the basis for finding the location where petitioners were issued violations to be a restricted block face, the ECB invoked section 17-315 (i) of the Administrative Code, which prohibits vending in areas subject to Parks Department jurisdiction "unless written authorization therefor has been obtained from the commissioner." This provision is inapposite. As the ALJ noted, petitioners were not cited for vending without a permit. Nor does this provision impose the type of restriction contemplated

by section 3 of the statute by prohibiting the operation of "other vending businesses" on the block face on particular days and at specified times. Absent a showing that, pursuant to statute, petitioners were allowed to vend at their location when the locality prohibited other vendors from conducting business, they are not subject to the statutory limit of two such authorized vendors (General Business Law § 35-a [3]).

Whether other regulations, such as those issued by DCA, restrict vending on the block face at the subject times is immaterial. "It is settled that a court's review of the propriety of an agency's determination is confined to the particular grounds invoked by the agency in support of its action" (*Matter of L&M Bus Corp. v New York City Dept. of Educ.*, 71 AD3d 127, 136 [1st Dept 2009], *mod on other grounds* 17 NY3d 149 [2011], citing *Matter of Yarbough v Franco*, 95 NY2d 342, 347 [2000]; *Matter of Montauk Improvement v Proccacino*, 41 NY2d 913, 913-914 [1977]). Thus, on this record, there is no basis for finding petitioners in violation of the statutory limit of two SVL holders per block face pursuant to section 35-a (3). Furthermore, since the applicability of section 35-a is the issue contested by the parties on appeal, there is no question that it has been preserved for review.

As an alternative basis for annulment of the ECB determination, in the verified answer to the individual petitions, it is conceded that "the City has separated vendors into general vendors and food vendors for the purposes of licensing since 1977." The ECB's determinations represent an inexplicable departure from administrative precedent and conflict with these longstanding regulatory distinctions. As pointed out by Mr. Rossi at the start of the administrative hearing before the ALJ, a number of prior determinations found General Business Law § 35-a to be inapplicable to food vendors. The ECB acknowledged its break with agency precedent in its determination of the administrative appeal in the Martin Diaz case. Referring specifically to an October 5, 2011 determination dismissing an identical violation issued to Mr. Diaz for failing to comply with an order of a DPR officer, the Board stated, in a footnote, that "res judicata" is inapplicable due to an "intervening change in the applicable legal context . . . The Board's finding that GBL 35-a applies to food vendors is such a change in context."

An agency, like a court, is not inexorably bound by the doctrine of stare decisis to conform to an incorrect application of a statute, but it is required to provide the reason for a change in its established position (*Matter of Charles A. Field Delivery*

*Serv. [Roberts]*, 66 NY2d 516, 519, 520 [1985]). Having stated that its finding that General Business Law § 35-a is applicable to food vendors constitutes a change in position, the ECB's failure to provide any explanation renders the instant determinations arbitrary as a matter of law. As the Court of Appeals noted: "when an agency determines to alter its prior stated course it must set forth its reasons for doing so. Unless such an explanation is furnished, a reviewing court will be unable to determine whether the agency has changed its prior interpretation of the law for valid reasons, or has simply overlooked or ignored its prior decision. Absent such an explanation, failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made" (*id.* at 520 [internal citation omitted]).

The ECB determination sets forth various reasons why the agency thinks section 35-a should apply to food vendors; it does not state why the City is departing from a regulatory system that has concededly drawn a clear distinction between food and non-food vendors for nearly four decades. Although the issue was placed before it, the ECB has not explained why, or by what means, regulations aimed at general vendors are to be applied to food vendors, essentially by treating them as specialized vending licensees. An agency, as a general matter, is required to adopt a rational interpretation of the law under which it operates (*see Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]), and particularly so where, as here, the agency proposes to reverse its position with respect to the law's application.

ECB's determination does not demonstrate that its interpretation of General Business Law § 35-a is consistent with the City's existing regulatory structure. As Supreme Court noted, the definition of "general vendor" specifically provides that it "shall not include a food vendor" (Administrative Code § 20-452 [b], citing Administrative Code § 17-306 [c]). Furthermore, as Mr. Rossi observed, the specialized vending licensee is designated on the license itself as "a disabled veteran general vendor." In addition, qualification for an SVL requires proof that the applicant "holds a general vending license" (6 RCNY 2-315 [b] [3] [iii]). Thus, under the City's licensing system, a general vendor is not permitted to sell food; only a general vendor can apply for an SVL; the SVL is expressly denominated a "specialized license," held by a "general vendor"; and SVL holders are only restricted by General Business Law § 35-a (2) "[i]n areas where general vending is authorized." Taken

together, these various provisions amply support Supreme Court's conclusion that the City's restrictions on the number of qualifying disabled veterans who may vend on a restricted block face apply exclusively to those persons it licenses as general vendors.[5] The provisions also illustrate the extent to which ECB's proposal to subject food vendors to statutory restrictions placed on SVL holders is at variance with the established regulatory scheme.

As this matter illustrates, application of general vending restrictions to food vendors presents some practical inconsistencies. The evidence presented to the ALJ by Mr. Rossi demonstrates that the areas where food vending is restricted by DCA regulations differ from those areas restricted by DOHMH regulations. The policy reasons behind the requirement of consistent results—particularly "guidance for those governed by the determination made" and "stability in the law"—are not advanced by requiring the food vendor, regulated by DOHMH, to anticipate being subjected to vending restrictions directed at the general vendor and promulgated by DCA (*Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d at 519). Nor are impartiality and the appearance of justice promoted by issuing a food vendor a general vending license, which does not permit the vending of food, for the apparent purpose of subjecting the food vendor to general vending restrictions (*id.*).

The majority questions the City's position that the five-block stretch of sidewalk fronting the Metropolitan Museum of Art from 79th to 84th Streets constitutes a single "block face." Agency regulations define the term as "the area of sidewalk spanning from one intersection to the next" (Rules of City of NY Dept of Consumer Affairs [6 RCNY] § 2-315 [a] [I]). Meanwhile, Vehicle and Traffic Law § 120, subdivision (a) defines the term "intersection" as, inter alia, "the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles." It is beyond dispute that the T-junction formed by each intervening street from 80th to 83rd Street constitutes an intersection under the statute, and ECB has offered no explanation for its contrary interpretation. The significance of the omission in the present

---

**5.** The City, at oral argument, informed this Court that it does indeed issue SVL's to food vendors, and there are indications in the record that some, if not all of the petitioners have obtained them. Presumably, to qualify, petitioners first obtained general vending licenses. The City does not explain its rationale for issuing a general vending license to a vendor who cannot use it to sell food, and neither party has provided any guidance concerning the actual use of the SVL by food vendors within the existing regulatory framework.

context appears to be minimal, however, in view of Sergeant Harris's testimony that, due to the prohibition against vending in bus stops and the profusion of bus stops along the entire length of sidewalk fronting the museum, there are only two areas where vendors can legally position their carts. Thus, it may be that petitioners and the competing food vendors who outranked them were operating not only on the same block face, as construed by the ECB, but on the same block, as delineated by bounding intersections, rendering the point moot for the purpose of determining whether statutory density restrictions were exceeded.

In any event, Supreme Court did not reach the question of whether the ECB's definition of block face is arbitrary and capricious, the City is not aggrieved by any adverse decision on the matter (CPLR 5511), the subject has not been briefed by the parties, and the issue is not before this Court. Even if the question were properly presented for review, the pertinent inquiry is whether the ECB has a rational basis for construing the sidewalk fronting the Metropolitan Museum as a single block face, not merely, as the majority decides, whether the agency's construction of the term intersection varies from that of the Vehicle and Traffic Law. "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman*, 28 NY2d at 438 [1971]; *see Matter of Tommy & Tina, Inc. v Department of Consumer Affairs of City of N.Y.*, 95 AD2d 724 [1st Dept 1983], *affd for reasons stated below* 62 NY2d 671 [1984]). In the absence of any briefing by the City concerning the reason for designating the subject location as a restricted block face, this issue is not reviewable.

Finally, a determination of whether petitioners were in violation of statutory density restrictions under the criterion established by the majority would first require a determination as to whether petitioners were vending on the same *block* as competing food vendors, a question unanswerable on the present record. We do not know where these food carts were located at the time the violations were issued. All the food carts could have been clustered within a single block directly in front of the museum entrance, which would subject petitioners to the restriction of section 35-a (3) even if the stretch of sidewalks fronting the museum are deemed separate block faces. Thus, simply finding that "the multi-block sidewalk span in front of the museum is not a single block face" does not, as the majority presumes, automatically resolve the issue in favor of petitioners.

Accordingly, the respective judgments (each denominated order and judgment) should be affirmed. ■