[800 NYS2d 207]

In the Matter of Jacob Heller, Deceased. Sandra Davis, Appellant-Respondent; Herbert M. Heller et al., Respondents-Appellants.

Second Department, August 15, 2005

### APPEARANCES OF COUNSEL

*Greenfield Stein & Senior, LLP*, New York City (*Gary B. Friedman* and *Jeffrey H. Sheetz* of counsel), for appellant-respondent.

*Greenberg Traurig, LLP*, New York City (*Linda B. Hirschon* of counsel), and *Thacher Proffitt & Wood, LLP*, White Plains (*Kevin J. Plunkett* and *Darius P. Chafizadeh* of counsel), for respondents-appellants.

### OPINION OF THE COURT

Spolzino, J.

This appeal presents two novel issues with respect to the unitrust provisions of the Estates Powers and Trusts Law (*see* EPTL 11-2.4), which became effective on January 1, 2002. These changes to New York trust law, which have been characterized by one learned commentator as "sweeping" (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 11-2.4, 2005 Pocket Part, at 39), permit a trustee, upon electing unitrust status, to pay to the income beneficiary each year an amount equal to four percent of the value of the trust principal, regardless of the income that the trust has actually earned. The

first issue presented is whether a trustee who is also a remainderman, and, therefore, stands to benefit in his or her personal capacity from the choice to pay a fixed percentage of trust assets to the income beneficiary, may elect unitrust status. The second issue is whether the election may be made retroactively.

Because the statute imposes no impediment to an election by an interested trustee and to permit such an election would not be inconsistent, per se, with the applicable common-law limitations on the conduct of fiduciaries, we affirm the order of the Surrogate's Court insofar as it denied that branch of the petitioner's motion which was for summary judgment annulling the election. We disagree with the Surrogate's determination, however, that the election may not be made retroactively.

These issues arise in connection with a testamentary trust created by Jacob Heller (hereinafter Jacob) in 1984. The trustees of the trust are Jacob's two sons, Herbert M. Heller and Alan J. Heller (hereinafter the trustees). The trustees each hold a 20% interest in the remainder of the trust. The balance of the remainder interest is held in equal shares by their sisters, Suzanne Heller and Faith Willinger. The income beneficiary of the trust is their stepmother, Bertha Heller (hereinafter Bertha), who is the mother of the petitioner, her attorney-in-fact.

In February 2003 the trustees elected to treat the trust as a unitrust, retroactively to January 1, 2002. As a result of the trustees' election, Bertha will no longer receive any portion of the annual trust income in excess of four percent of the value of the trust's principal. Before the election, the trust had been paying Bertha its actual annual income, in the amount of approximately $190,000. After the election, the income she received was reduced to approximately $70,000 per year.

In light of the undisputed relationship between trust income and principal value before the election here, simple arithmetic suggests that the trustees will likely benefit personally, in their capacity as remaindermen, from the election that they have made in their fiduciary capacity. On this basis, the petitioner contends that the election should be set aside because the trustees are precluded by their concurrent status as remaindermen from making the election. For several reasons, however, we conclude that the potential benefit to the trustees personally is not, in itself, sufficient to preclude the election.

The unitrust was created by statute (see EPTL 11-2.4). The statute does not preclude an interested trustee from electing

unitrust status. While in many cases the absence of language in a statute does not provide a firm basis for gauging legislative intent (*see e.g. People v Hernandez,* 82 NY2d 309, 316 [1993]; *People v Byrne,* 77 NY2d 460, 468 [1991]), the legislative silence here is significant. In the same chapter of the laws of 2001 which created the unitrust, the Legislature explicitly prohibited an interested trustee from making an adjustment in distributions between principal and income that a disinterested trustee is permitted to make (*see* EPTL 11-2.3 [b] [5] [C] [vii]). In light of this, the Legislature's failure to include a similar prohibition in the provision creating the unitrust is a clear indication that it did not intend to impose such a ban with respect to the unitrust election. Moreover, although it is common for a beneficiary of a trust to be appointed as its trustee (*see* 13 Warren's Heaton, Surrogates' Courts § 209.02 [1] [6th ed]), the Legislature established unitrust status as the preferred option for trust administration by creating a rebuttable presumption in its favor (*see* EPTL 11-2.4 [e] [5] [B]).

The Legislature's intent that there be no per se ban on the election of unitrust status by an interested trustee is confirmed by the framework that the Legislature erected within which to determine the propriety of a unitrust election (*see* EPTL 11-2.4 [e] [5] [A]). The factors the court must consider, including the nature, purpose, and expected duration of the trust, the intent of the creator of the trust, the identity and circumstances of the beneficiaries, the need for liquidity, regularity of payment, and preservation and appreciation of capital (*see* EPTL 11-2.4 [e] [5] [A]), while broad enough to allow the court to consider the status of the trustee in making the election, do not require that an election by an interested trustee be set aside. The Legislature's failure to include within this framework the absolute prohibition that the petitioner suggests is a clear indication that its intent was otherwise (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274, 285 [1997]; *Pajak v Pajak,* 56 NY2d 394, 397 [1982]).

The petitioner here does not argue that the court improperly denied summary judgment vacating the election on the basis of the statutory factors. Rather, the petitioner contends that the election of unitrust status by a trustee who is also a remainderman is a per se violation of the trustee's fiduciary duty. In the absence of a statutory ban, however, the petitioner can prevail on this claim only by demonstrating that the authority of such a trustee to make such an election is incompatible with the fidu-

ciary obligation under which the trustee operates. We conclude that it is not.

There is no doubt that, as the petitioner asserts, a trustee is a fiduciary (*see Berardino v Ochlan,* 2 AD3d 556, 557 [2003]; Restatement [Second] of Trusts § 2), and, therefore, is "held to something stricter than the morals of the market place" (*Meinhard v Salmon,* 249 NY 458, 464 [1928]). The trustee thus owes to the beneficiaries of the trust a duty to act with prudence in the manner in which he or she manages the assets of the trust (*see* EPTL 11-2.2; *Matter of Janes,* 90 NY2d 41, 49-50 [1997]; *Matter of Clark,* 257 NY 132, 136; *King v Talbot,* 40 NY 76, 84-85 [1869]). Where the income beneficiary and the holder of the remainder interest are different individuals, however, the trustee owes an equal duty of fidelity to each (*see In re Woodin's Estate,* 118 NYS2d 465, 469 [1952]; Restatement [Second] of Trusts § 232). In such circumstances, there is thus an unavoidable conflict in the trustee's fiduciary obligation. Despite this inherent conflict, however, a party holding a beneficial interest in a trust is not disqualified merely by that status from serving as trustee (*see Weeks v Frankel,* 197 NY 304, 312 [1910]; *Woodward v James,* 115 NY 346, 357 [1889]). In fact, as noted above, the practice of appointing an interested party as trustee is common (*see* 13 Warren's Heaton, Surrogates' Courts § 209.02 [1] [6th ed], *supra*). There is nothing inherent in the unitrust election at issue here that requires the application of a different principle.

Admittedly, as this case illustrates, the unitrust election can inure to the financial benefit of the trustee in his or her capacity as remainderman. But that is not always the case. The state of financial facts which may have given rise to the election will not necessarily endure for the life of the trust. Markets change and with them the respective benefits of the election to the income and remainder interests. Thus, an election that may initially have appeared to be to the trustee's advantage may not ultimately be so. Having elected unitrust status, however, the trustee is without authority to elect otherwise without the approval of the court (*see* EPTL 11-2.4 [e] [2] [A]).

To conclude that an interested trustee is not precluded by that status alone from exercising a unitrust election, however, is not to say that an interested trustee has unbridled authority to do so. As the Surrogate correctly identified, the remedy for an inappropriate election is found in the supervisory power of the court. The statute specifically provides, in this regard, that the

court may "[a]t any time" direct that the unitrust election be discontinued (EPTL 11-2.4 [e] [2] [B]). The instant proceeding seeks just such a result.

Thus, although the interest of the trustees as remaindermen does not, by itself, invalidate the unitrust election, the validity of the election is nonetheless an issue that, as the Surrogate correctly held, must be adjudicated in accordance with the standards established in the statute. Here, however, these issues present questions of fact that preclude the granting of summary judgment. To begin with, there is a dispute with respect to the decedent's purpose in creating the trust. Specifically, the trustees claim that Jacob wished his issue to be the primary beneficiaries of the principal, while the petitioner, not surprisingly, asserts that he wanted Bertha to benefit fully from the income of the trust during her lifetime (see EPTL 11-2.4 [e] [5] [A] [i]). There are also issues of fact to be resolved with respect to the actual value of the trust principal and whether it is an appreciating asset (see EPTL 11-2.4 [e] [5] [A] [iv]), both of which must be considered in determining whether unitrust status is appropriate for this trust.

As a result, the petitioner failed to demonstrate prima facie entitlement to judgment as a matter of law, as she must do in order to prevail on her motion for summary judgment (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980]). The Surrogate, therefore, properly denied the petitioner's motion for summary judgment annulling the election, leaving the issue of its propriety to be determined after consideration of the factors enumerated in the statute.

The second issue, whether the unitrust election may be made retroactively, presents a more discrete problem. Since the unitrust status at issue here is a pure creature of statute, the issue of its retroactive application must be determined by reference to the statute by which it was brought into being, EPTL 11-2.4. It is well-established that statutory interpretation begins with the language of the statute (see Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (id. at 583).

▇ In this case, the relevant statutory language is found in EPTL 11-2.4 (d) (1), which provides that the interest of the ben-

eficiary in the unitrust amount commences on either "the date specified in the governing instrument," or "the date specified in an election to have this section apply," or "the date specified by the court," or, where none of those specifications have been made, on "the date assets first became subject to the trust." Here, the governing instrument, having been executed before the enactment of EPTL 11-2.4, makes no reference to unitrust status and there has been no date set by the court. There is, however, a date set by the election. Since the statute thus authorizes the trustees who have made the election to specify its effective date (*see* EPTL 11-2.4 [d] [1]), the date they have specified must control.

That the statutory language thus permits the trustees to elect retroactive application is confirmed by the additional language in the statute providing for a financial adjustment between the income beneficiary and remaindermen in the event that the election is so applied. The statute specifically provides that where, in the event of a unitrust election, the current beneficiary is underpaid or overpaid, the trustee is authorized either to pay out to or to recover from the beneficiary the amount due or owed (*see* EPTL 11-2.4 [b] [6]). The petitioner failed to suggest any purpose for this provision other than to provide for the proper disposition of funds in the event of the retroactive application of the unitrust election.

The language of EPTL 11-2.4 (e) (4) (A), upon which the petitioner relies, does not compel a contrary result. It is apparent from both the caption of that section ("Trusts to which section applies") and its text, that the section defines not the date on which the election commences, but the universe of trusts to which the unitrust provision may be applied. To the extent that this section can be read to refer to the issue of retroactive application of the election, it specifically states that the unitrust status, however brought about, will be effective "as of the first year of the trust in which assets first become subject to the trust," "unless," with respect to an election by the trustee, the election is made "as of the first day of the first year of the trust commencing after the election is made." This language leaves the effective date of the election to the discretion of the trustee, providing only that in the event the trustee fails to specify an effective date, the election will be effective, like any other determination of unitrust status, "as of the first year of the trust in which assets first became subject to the trust." Here, since the trust-

ees exercised their power to specify the date of the election, the statute requires that their determination be honored.

The Surrogate's reliance upon a report prepared by the EPTL-SCPA Legislative Advisory Committee in support of a proposed amendment to EPTL 11-2.4 (*see* 14 Warren's Heaton, Surrogates' Courts, Appendix 5.04 [6th ed]), while admirably attempting to shed additional light on statutory language that is, admittedly, difficult to construe, caused the Surrogate to reach a result that is inconsistent with the current statutory language. With all due respect to the distinguished authors of the memorandum, and even assuming that the proposed amendment reflects wise public policy and may ultimately be adopted by the Legislature, the fact remains that the Legislature has not yet acted upon the proposal. Until it does so, we must determine the effective date of the election strictly in accordance with the language that has been enacted into law.

Where the relevant statutory language is unambiguous, our role in resolving such a dispute is limited to giving effect to the language of the statute (*see Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 565 [1984]). Since the language of the relevant statute here unambiguously permits the trustees to determine that the election will apply retroactively, if the election is sustained, it shall be permitted to apply on the date selected by the trustees, subject, of course, to the fact, as the trustees recognize, that the statute did not come into effect until January 1, 2002.

Accordingly, the order is affirmed insofar as appealed from, and reversed insofar as cross-appealed from. Those branches of the petitioner's motion which were for summary judgment annulling the retroactive application of the unitrust election to January 1, 2002, and directing Herbert M. Heller and Alan J. Heller to pay to the beneficiary the income that otherwise would have been paid to her but for the retroactive application of the unitrust election are denied.

ADAMS, J.P., SANTUCCI and MASTRO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order is reversed insofar as cross-appealed from, on the law, without costs or disbursements, those branches of the petitioner's motion which were for summary judgment annulling the retroactive application of the unitrust election to

January 1, 2002, and directing Herbert M. Heller and Alan J. Heller to pay to the beneficiary the income that otherwise would have been paid to her but for the retroactive application of the unitrust election are denied.