OPINION OF THE COURT
Michael D. Stallman, J.
This CPLR article 78 proceeding requires the court to determine whether Real Property Tax Law § 421-a (2) (f) (ii) and related statutes permit high rent/high income deregulation[1] of an apartment after the apartment building’s section 421-a tax benefits expire.
Background
According to the petition, in 1991, petitioner Tribeca Equity Partners, L.P., applied for, and was granted, RPTL 421-a tax benefits for a building it was constructing at 105 Duane Street in Manhattan (the Building). As a condition of obtaining such tax benefits, the Building became subject to the Rent Stabilization Code (RSC) (see RPTL 421-a [2] [f]). Construction of the Building was completed in early 1994, and in April 1994, respondent Michael Anglin took occupancy of apartment 44E in the Building as a rent-stabilized tenant.
In 2008, Tribeca informed Anglin that, when the 421-a tax benefits ended in 2009, his apartment would no longer be subject to rent stabilization. Thereafter, Anglin filed a complaint with respondent New York State Division of Housing and Community Renewal (DHCR) seeking clarification of his status as a rent-stabilized tenant.
On July 2, 2010, DHCR issued an order which held that
“[p]ursuant to Section 2520.11 (o) (2) of the Rent Stabilization Code, the owner has to attach to the tenant’s vacancy lease and each renewal lease thereof, a notice informing the tenant that the *504 housing accommodation shall become deregulated upon the expiration of the last lease entered into during the tax benefit period and state the date on which such tax benefit is scheduled to expire. Based upon the above, the Rent Administrator determines that the owner failed to attach to the tenant’s renewal lease proper notices regarding the expiration of the 421 (a) Partial Tax Exemption program. Therefore, the owner forfeits its rights to exempt the subject apartment from the Rent Stabilization Code/Law. Accordingly, the subject apartment remains under DHCR’s jurisdiction until the tenant vacates the subject apartment. Therefore, the Rent Administrator directs the owner to offer a renewal lease to the tenant.” (Anglin aff, exhibit B.)
Tribeca did not appeal the Rent Administrator’s July 2, 2010 order. However, on May 18, 2011, Tribeca filed an application with DHCR seeking to remove Anglin’s apartment from rent stabilization pursuant to the high rent/high income deregulation provisions of the RSC (Administrative Code of City of NY § 26-504.1).[2]
On December 18, 2013, DHCR’s Rent Administrator issued an order granting Tribeca’s high rent/high income deregulation petition (petition, exhibit B).
In January 2014, Anglin filed a petition for administrative review (PAR) of the December 18, 2013 order. In that PAR, Anglin argued, inter alia, that the high rent/high income deregulation order should be revoked because, in the 2010 order, DHCR had already determined that, irrespective of the expiration of the Building’s 421-a tax benefits, Anglin’s apartment would remain rent-stabilized until Anglin vacated, because Tribeca had failed to attach proper notices to Anglin’s renewal leases.
On December 8, 2014, DHCR issued its PAR determination revoking the December 2013 order that granted Tribeca’s high rent/high income deregulation petition. In the December 8, 2014 determination, the Commissioner held that
“RPTL § 421-a (2) (f) (i) provides that high rent/ high income rent deregulation is only available to apartments in buildings that became subject to the *505 provisions of RPTL § 421-a (2) (f) before July 3, 1984.
“RPTL § 421-a (2) (f) (ii) does not provide for high rent/high income deregulation for apartments that became subject to RPTL § 421-a (2) (f) after July 3, 1984. Those apartments may be deregulated only based upon proper lease notices as to the expiration of tax benefits or a vacancy. The subject apartment is governed by this section of the RPTL. Since it has already been determined that the owner failed to provide proper lease notices, the Commissioner finds that the subject apartment remains rent stabilized until [Anglin] vacates.” (Anglin aff, exhibit D.)
Thereafter, Tribeca commenced this article 78 proceeding which seeks to revoke DHCR’s December 2014 order as arbitrary and capricious on the grounds that: (1) the high rent/ high income deregulation provisions of the RSC are distinct from the section 421-a deregulation provisions that require lease notifications; (2) the Real Property Tax Law § 421-a (2) (f) notice provision does not exempt Anglin from high rent/high income deregulation; and (3) prior DHCR precedent, court decisions, and Administrative Code § 26-504.3 permit high rent/ high income deregulation after the 421-a tax benefits have expired.
Discussion
The standard of review in this article 78 proceeding “is whether DHCR acted in an arbitrary and capricious manner, in violation of lawful procedures, or in excess of its jurisdiction” (Matter of 73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal, 96 AD3d 524, 526 [1st Dept 2012], citing Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]).
Moreover, it is well settled that, because the matter before the court concerns the interpretation of interrelated statutes, “the deference we are required to give the agency extends to its interpretation of [those statutes]” (73 Warren St., LLC, 96 AD3d at 526-527; Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988] [“DHCR’s interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference”]).
In addition, when a court is called upon to construe a statute, the text of the statute is the best evidence of legislative *506 intent and “when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used” (People v Williams, 19 NY3d 100, 103 [2012] [internal quotation marks and citation omitted]; see also Matter of Kirschner v Fisher, 117 AD3d 567, 570 [1st Dept 2014]; Matter of Heller, 23 AD3d 61, 68 [2d Dept 2005] [where the relevant statutory language is clear, the court’s role “is limited to giving effect to the language of the statute”]).
The Relevant Statutes
The first relevant statute is RPTL 421-a (2) (f) which states:
“Notwithstanding the provisions of any local law for the stabilization of rents in multiple dwellings or the emergency tenant protection act of nineteen seventy-four, the rents of a unit shall be fully subject to control under such local law or such act, unless exempt under such local law or such act from control by reason of the cooperative or condominium status of the unit, for the entire period during which the property is receiving tax benefits pursuant to this section for the period any such applicable law or act is in effect, whichever is shorter. Thereafter, such rents shall continue to be subject to such control to the same extent and in the same manner as if this section had never applied thereto, except that such rents shall be decontrolled if:
“(i) with respect to units subject to the provisions of this section on the effective date of this subparagraph such a unit becomes vacant after the expiration of such ten year period or applicable law or act; provided, however, that such units may be decontrolled pursuant to the rent regulation reform act of 1993 and provided further that the rent shall not be decontrolled for a unit which the commissioner of housing and community renewal or a court of competent jurisdiction finds became vacant because the landlord . . . engaged in any course of conduct, . . . which interfered with or disturbed or was intended to interfere with or disturb the comfort, repose, peace or quiet of the tenant in his use or occupancy of such unit, . . . ; or
“(ii) with respect to units which become subject to the provisions of this section after the effective date of this subparagraph, such tax benefit period as provided in the opening paragraph of this para *507 graph or applicable law or act shall have expired and either each lease and renewal thereof for such unit for the tenant in residence at the time of such decontrol has included a notice in at least twelve point type informing such tenant that the unit shall become subject to such decontrol upon the expiration of such tax benefit period as provided in the opening paragraph of this paragraph or applicable law or act and states the approximate date on which such tax benefit period as provided in the opening paragraph of this paragraph is scheduled to expire; or such unit becomes vacant as provided under subparagraph (i) of this paragraph.”
It is undisputed that construction on the Building began in 1991 and that the Building was first occupied in 1994. The effective date of the above-cited subparagraph was July 3, 1984. Accordingly, because the Building became subject to the statute after 1984, the plain language of RPTL 421-a (2) (f) provides that, in this case, RPTL 421-a (2) (f) (ii) governs the question of the applicability of deregulation and, pursuant to that subparagraph, deregulation is available after the expiration of section 421-a tax benefits only if (a) the required notices were attached to each lease and lease renewal, or (b) the apartment becomes vacant. Unlike RPTL 421-a (2) (f) (i), subparagraph (ii) does not provide for deregulation of the unit pursuant to the Rent Regulation Reform Act of 1993 (RRRA) which is the act that permits high rent/high income deregulation.
The second relevant statute is Administrative Code § 26-504.1,[3]
[4]enacted as part of the RRRA. It provides:
“Upon the issuance of an order by the division, ‘housing accommodations’[4] shall not include housing accommodations which: (1) are occupied by persons who have a total annual income, as defined in and subject to the limitations and process set forth in section 26-504.3 of this chapter, in excess of the deregulation income threshold, as defined in section 26-504.3 of this chapter, for each of the two preceding calendar years; and (2) have a legal *508 regulated monthly rent that equals or exceeds the deregulation rent threshold, as defined in section 26-504.3 of this chapter. Provided, however, that this exclusion shall not apply to housing accommodations which . . . [have] become subject to this law (a) by virtue of receiving tax benefits pursuant to section four hundred twenty-one-a . . . of the real property tax law, except as otherwise provided in subparagraph (i) of paragraph (f) of subdivision two of section four hundred twenty-one-a of the real property tax law" (emphasis added).
The language of the above-cited statutes supports the Commissioner’s holding. Generally speaking, the statutory provisions which authorize high rent/high income deregulation for otherwise eligible rent-stabilized apartments are limited by the statutes that made those apartments subject to rent regulation by receipt of tax benefits (see 73 Warren St., LLC, 96 AD3d at 528). Apartments that are rent-stabilized solely because of their receipt of section 421-a tax benefits are not subject to high rent/high income deregulation, except as provided for in RPTL 421-a, after those section 421-a tax benefits expire.
Apartments in buildings that became subject to RPTL 421-a after July 3, 1984, may be removed from rent stabilization after expiration of section 421-a tax benefits only if proper notices are attached to each lease and lease renewal or if the apartment becomes vacant (RPTL 421-a [2] [f] [ii]).
The cases cited by Tribeca for the proposition that high rent/ high income decontrol is permitted are inapposite, because none of those cases address or decide whether RPTL 421-a (2) (f) (ii) permits high rent/high income deregulation of an apartment once section 421-a tax benefits have expired.
Matter of RAM I LLC v New York State Div. of Hous. & Community Renewal (123 AD3d 102, 107 [1st Dept 2014]) was cited by Tribeca for the proposition that the legislative history under the RSC supports deregulation after the expiration of tax benefits. However, RAM I addressed only the interplay of the rent control laws with J-51 tax benefits. In that case, the Appellate Division, First Department held that an apartment that was subject to rent control prior to receiving J-51 tax benefits remained exempt from high rent/high income decontrol after J-51 benefits expired because the unambiguous language *509 of Administrative Code § 26-403 (e) (2) (j) provided that a housing unit qualified for an exemption from high rent/high income deregulation when it became subject to that provision by receiving J-51 benefits.
In 73 Warren St., LLC (96 AD3d at 530), the Appellate Division, First Department was asked to decide whether a dwelling unit that was rent-stabilized because of the building’s receipt of J-51 tax benefits was excluded from high rent/high income deregulation under Administrative Code § 26-504.1. There, the Court determined that the exception to the exclusion from high rent/high income deregulation under Administrative Code § 26-504.1 applied only to buildings receiving section 421-a tax benefits. Accordingly, the Court did not permit the owner to commence a high rent/high income deregulation proceeding.
Although 73 Warren St., LLC was cited by Tribeca in support of its position that high rent/high income deregulation is allowed, the case can be distinguished, because it dealt with the interplay of J-51 and rent stabilization. Moreover, on closer analysis, 73 Warren St., LLC actually supports respondents’ position that Anglin’s apartment is excluded from high rent/ high income deregulation pursuant to Administrative Code § 26-504.1, because the First Department affirmatively stated that exclusion from high rent/high income deregulation was available for certain buildings that had received section 421-a tax benefits (id. at 530-531).
Tribeca’s reliance on Matter of Schiffren v Lawlor (101 AD3d 456, 457 [1st Dept 2012]) is similarly unavailing because that case is factually distinguishable. Unlike the matter before this court, Schiffren involved a building that was subject to rent regulation before its receipt of J-51 tax benefits. There, the Court held that based on the plain language of Administrative Code §§ 11-243[5] and 26-504 (c), high rent/high income decontrol is not per se prohibited once the J-51 tax benefits expire on a dwelling unit that had been subject to regulation even before the tax benefits were obtained.
The administrative decisions cited by Tribeca do not change the result. In Matter of Stahl (Jan. 11, 2010, docket No. XJ410038RT) where high rent/high income deregulation was permitted, the decision is silent about whether the building at issue is a post- or pre-1984 building. (Petition, exhibit E.) More *510 over, in Matter of Rivergate L.P. (Sept. 25, 2008, docket No. WG410006RK) although the Commissioner cited Administrative Code § 26-504.1, he failed to recognize the distinction, drawn in that law and in section 421-a (2) (f) (i) and (ii), between apartments in pre-1984 buildings and apartments in post-1984 buildings, each of which, according to the clear and unambiguous language of those laws, are treated differently (petition, exhibit F at 5).
Conclusion
Respondent did not act arbitrarily or capriciously or contrary to law in determining the tenant’s PAR. Respondent’s interpretation of the law was correct.
Accordingly, based on the foregoing, it is adjudged that the petition is denied and the proceeding is dismissed with costs and disbursements to respondents.

. The court has used the term “high rent/high income deregulation” because that term was used by the Commissioner in the December 8, 2014 determination that is challenged in this petition. The court notes, however, that the terms luxury deregulation and high rent/high income deregulation are used interchangeably in some of the parties’ submissions.

. At the time that the landlord made its application for deregulation of Anglin’s apartment, Administrative Code § 26-504.3 permitted high rent/high income deregulation of apartments if the monthly rent exceeded $2,000 and the total household income exceeded $175,000 for two consecutive years.

. Administrative Code § 26-504.3 permits high rent/high income deregulation if a tenant’s income and rent exceed the statutory threshold. However, that section of the Administrative Code is expressly modified by Administrative Code § 26-504.1, which excludes apartments that became rent-stabilized by virtue of having received section 421-a tax benefits, except if those apartments are in pre-1984 buildings.

. “Housing Accommodations” are defined as rent-stabilized units.

. This section of the Administrative Code deals exclusively with J-51 tax benefits and is not relevant to the matter before this court.