OPINION OF THE COURT
Kathryn E. Freed, J.
.Decision/order of the motion is as follows:
In this CPLR article 78 proceeding, petitioner The Campbell Apartment, Ltd., the current lessee of The Campbell Apartment, a beaux art style bar at Grand Cental Terminal, moves (motion sequence No. 001), inter alia, to nullify a lease bidding process solicited by respondents Metropolitan Transportation Authority and Metro-North Commuter Railroad pursuant to which a new lease for the bar was awarded to respondent GG Campbell, LLC. Additionally, respondents Gerber Group Limited Partnership and Gerber Group move (motion sequence No. 002) to dismiss the petition and for sanctions against petitioner. After extensive oral argument and a review of the parties’ voluminous papers and the relevant statutes and case law, the petition is granted to the extent indicated below and the motion to dismiss and for sanctions is denied.
Factual and Procedural Background
Despite the lengthy facts and voluminous arguments in this matter, the primary issue is rather straightforward: whether respondents Metropolitan Transportation Authority and Metro-North Commuter Railroad (hereinafter MTA and MNR, respectively, and hereinafter collectively MTA) improperly solicited bids for the lease of The Campbell Apartment (the Apartment), a beaux art style bar located in Grand Central Terminal (GCT) in New York City, pursuant to an October 2015 request for proposals (RFP) because they failed to obtain an *284 independent appraisal as required by Public Authorities Law § 2897 (3).[1]
The Apartment was leased to petitioner The Campbell Apartment, Ltd. by the MTA, acting through respondent MNR, as landlord, in 1997. (Grossich aff para 2.) Petitioner spent approximately $2.5 million renovating the premises before the Apartment opened in 1999. (Id. para 7.) The initial 10-year lease term had an option to extend for five years, which was exercised, and, in April 2015, petitioner executed a February 12, 2015 amendment to the lease providing that it may remain in possession on a month-to-month basis. (Id. paras 2-3; exhibit A to Marshall aff.) The February 12, 2015 agreement provided that the MTA’s consent to allow petitioner to remain in possession of the Apartment was conditioned on the latter’s understanding that the MTA “may issue a notice to [petitioner terminating the lease and requiring [pjetitioner to vacate the premises on 30 days’ notice.” (Grossich aff para 30; see also petitioner’s mem of law in support at 4; exhibit A to Marshall aff.)
On or about October 15, 2015, the MTA issued an RFP seeking a tenant for a 10-year lease of the apartment. (Exhibit 2 to petition; Grossich aff para 11.) The selection criteria for the RFP were the direct economic benefit to the MTA, essentially the highest guaranteed rent (part A, maximum 70 points) and the indirect benefit to the MTA, consisting of factors such as attracting other desirable tenants and/or customers to GCT (part B, maximum 30 points). (Exhibit 2 to petition at 33-34.) Petitioner scored a full 30 points on part B of the RFP due to its “excellent, long-term track record as a current tenant” but only 43.3 under the first, having proposed a guaranteed first year annual rent of $750,000, earning a total score of 73.3. (Marshall aff in opp para 17.) The new tenant selected, GG Campbell, LLC, which proposed a guaranteed first-year rent of $1.1 million, scored a full 70 points on part A and 23 points on part B, for a total score of 93. (Id.) Thereafter, the MTA began negotiating a lease with GG Campbell. (Id. para 18.)[2]
Prior to responding to the RFP, petitioner consulted with Reed Zukerman, a licensed real estate salesperson associated *285 with Newmark Grubb Knight Frank (NGKF), a licensed real estate broker which, the RFP explicitly stated, was the MTA’s leasing agent in GCT (exhibit 2 to petition at 8), and Zuker-man advised petitioner in an email dated September 16, 2015 that “[w]e have appraised your location at $150psf.” (Exhibit 9 to petition;[3] Grossich aff para 18; exhibit A to Zukerman aff & Zukerman aff paras 1, 7.) Zukerman also advised petitioner that he was “unable to provide comps for the area at this time.” (Exhibit 9 to petition; Grossich aff para 19; exhibit A to Zuker-man aff & Zukerman aff para 6.)
Petitioner maintained that, since the Apartment was 2,615 square feet, this would have translated into an annual rental value of $362,250, or $32,687.50 per month, more than $10,000 less than the $372,892.92 ($31,074.41/month) petitioner was paying under the most recent lease modification. (Grossich aff paras 4, 20.)[4] Petitioner submitted a response to the RFP proposing a guaranteed minimum' annual rent of $750,000, or $62,500 per month, in addition to the expenses which had 'become part of the lease terms, more than double than what petitioner was paying under the current lease. (Exhibit 3 to petition; Grossich aff para 13.)
In December of 2015, Grossich was advised by NGKF that petitioner had not submitted the proposal with the highest rent for the Apartment. (Grossich aff para 29.) On January 19, 2016, Grossich and his attorney, Robert Bergen, Esq., met with Jerome Page, Esq., General Counsel for the MTA, to complain that the RFP process was flawed. (Grossich aff para 35.) The following day, Bergen sent a memorandum to the MTA to confirm the points made at the meeting. (Exhibit 6 to petition.) In the memorandum, Bergen conceded that “[a]n RFP issued by any government agency for leasehold space is inherently unfair to the incumbent [leaseholder]. This is primarily because the incumbent’s costs and expenses are generally a matter of public record while the competitors’ are not.” (Id.) He further conceded that he understood that “fairness [was] not a critical *286 value to a government entity when compared with the need to maximize revenue.” (Id.)
On February 5, 2016, Bergen submitted a formal protest to the MTA stating, inter alia, that the RFP process was flawed because no independent appraisal had been conducted in connection therewith as required by Public Authorities Law § 2897 (3). (Exhibit 6 to petition; Grossich aff para 36.)[5] Bergen further asserted that the $150 per square foot estimate provided by Zukerman of NGKF may have been misleading because NGKF represented the Starwood Hotel Corporation, in which Gerber Group, the bidder which was awarded the lease for the Apartment, “either primarily or exclusively operate[d] bars in hotels.” (Exhibit 6 to petition; see also petition para 29.) Bergen demanded that the MTA conduct an investigation to determine whether “providing misleading rental value information to [petitioner] was an improper attempt by NGKF to steer the lease for [the Apartment] to a favored company.” (Id. )
Page denied the protest on February 22, 2016 stating, inter alia, “I have been assured that [the] MTA’s leasing agent, [NGKF], performed an adequate appraisal of the [p]remises and that each proposer received the same appraisal and other information in connection with the disposition solicitation process.” (Exhibit 8 to petition.) Page added that, “given that there was no evidence of improper influence on the RFP process by NGKF, and taking into consideration the breadth of services provided by, and the number of clients of, major New York City real estate brokers such as [NGKF],” he was dismissing petitioner’s claim of any improper influence. (Id.)
On February 26, 2016, Bergen submitted a supplemental protest to the MTA asserting, inter alia, that, if NGKF performed an appraisal, it did not comply with Public Authorities Law § 2897 (3) because it was not independent. (Exhibit 14 to petition.) Specifically, asserted Bergen, since NGKF was the MTA’s agent, the RFP process was flawed and had to be redone. (Id.) Bergen further argued that petitioner “never received a copy of whatever appraisal [the MTA claimed was] performed of the rental value of the Apartment” and he requested a copy of the same. (Exhibit 14 to petition.) Additionally, Bergen maintained that Zukerman’s “casual, one-sentence response to *287 an email,” which did not address the value of “comparable [ ]” spaces, did not constitute an appraisal. (Id.)
On March 31, 2016, “GG Campbell, LLC c/o The Gerber Group” executed a lease with the MTA. (Marshall aff para 18; exhibit D to Marshall aff, art 1.1 [b].) The lease provided that the commencement date was “indeterminate” and that possession of the Apartment and a specific commencement date were contingent upon the MTA’s ability to grant possession or upon approval by the MTA of GG Campbell’s plans for its proposed improvements to the Apartment. (Exhibit D to Marshall aff, arts 3.1-3.2, 6.6 [a], [b] at 12, 22.) The lease provided that GG Campbell could terminate the lease if it was not given possession within 365 days of March 31, 2016. (Exhibit D to Marshall aff, art 3.2 at 12.) The lease further provided that NGKF was the MTA’s leasing agent. (Exhibit D to Marshall aff, art 26 at 58.)
On April 5, 2016, Bergen telephoned and emailed the attorneys for respondents to advise them that petitioner would be filing an order to show cause seeking injunctive relief the next day. (Bergen aff para 24.) On April 6, 2016, petitioner moved, by order to show cause (motion sequence No. 001), for an order:
a. temporarily restraining and enjoining respondents from entering into any lease in connection with the RFP pending entry of judgment in this proceeding;
b. temporarily restraining and enjoining the MTA from issuing a notice to vacate or otherwise interfering with petitioner’s right to quiet enjoyment under its lease to the Apartment pending the entry of judgment in this proceeding;
c. annulling the RFP process due to the MTA’s failure to perform an independent appraisal; and
d. annulling the RFP process due to its failure to be an open ánd fair competitive process with an equal opportunity for all proposers to be informed of all the criteria to be considered in evaluating proposals.
In its petition verified April 5, 2015, petitioner asserted that the RFP process should be annulled as unlawful and improper since (1) it was conducted without an independent appraisal; (2) it was improper as a matter of law as arbitrary and capricious because the selection of GG Campbell was based on criteria not mentioned in, and which were at variance with, the RFP, i.e., the chosen bidder’s style was different from what *288 the RFP asked for; (3) petitioner was at a disadvantage because other bidders had access to information regarding the rent it had been paying; and (4) petitioner had a right to review the procurement record developed in connection with the RFP. (Petition paras 50-65.) Petitioner demanded that the RFP process should be annulled due to the MTA’s failure to obtain an independent appraisal and include it in the procurement record as required by law' and to conduct an open and fair competitive process affording all bidders an equal opportunity to be aware of the criteria to be considered in evaluating their proposals. It also sought to enjoin respondents from entering into any lease in connection with the RFP. The petition also alleged, inter alia, that respondent Gerber Group Limited Partnership was the entity to which the new lease for the Apartment had been awarded by the MTA and that Gerber Group might be the fictitious name of that entity or of a different entity to which the lease was awarded. (Petition paras 5-6.)
At the April 6, 2016 appearance, this court issued a temporary restraining order (TRO) pending the determination of this motion. The TRO prevented the MTA from transferring possession of the Apartment to GG Campbell while this proceeding remained pending. This court also directed petitioner to continue to pay rent and additional rent pursuant to the terms of its February 2015 agreement with the MTA while this proceeding remained pending.
On April 7, 2016, Stacy Tick Kudler, Senior Associate Counsel for the MTA, issued a response to petitioner’s renewed protest of February 22, 2016. The renewed protest was denied on the grounds that petitioner was not permitted to submit multiple protests and that it had commenced legal proceedings against the MTA. (Exhibit 17 to Bergen aff:) Kudler further stated that the new lease to the Apartment had been “executed with, and delivered to,” Gerber Group LLC on April 5, 2016. (Id.)
On April 18, 2016, pursuant to MTA policy, the Real Estate Department of the MTA reported the lease with GG Campbell to the Finance Committee of the MTA. (Marshall aff para 19.)
On May 6, 2016, the parties appeared for oral argument of petitioner’s application. After argument was held, this court issued an order, dated May 9, 2016, extending the TRO and directing the parties to submit additional papers on the following issues:
1. in the event this court determines that the MTA failed to perform an independent appraisal:
*289 a. what remedies are available; and
b. would the remedies be different depending on whether or not an independent appraisal conducted after the RFP process resulted in an estimated fair market value greater or less than the rent proposed by GG Campbell in response to the RFP;
2. the form and the amount of the undertaking to be posted by petitioner in the event this court grants petitioner’s motion for a preliminary injunction; and
3. if this court orders a new independent appraisal to be conducted, whether the ordering of such appraisal is fatal to the RFP process or the RFP process can be salvaged by the new appraisal.
On May 18, 2016, the MTA, acting through MNR, served its verified answer to the petition. The same day, respondent GG Campbell joined issue by service of its verified answer to the petition and respondents Gerber Group Limited Partnership and Gerber Group moved to dismiss the petition (motion sequence No. 002) on the ground that they were not signatories to the lease and thus the documentary evidence in the proceeding entitled them to dismissal. They also moved for sanctions on the ground that, given that there was no evidence of their involvement in the lease transaction, the proceeding should not have been commenced against them. In support of their motion, they submitted a memorandum of law.
On May 24, 2016, petitioner served a verified reply to the MTA’s answer.
Positions of the Parties
Petitioner argues (motion sequence No. 001) that it is entitled to a preliminary injunction pending the outcome of this proceeding because there is a substantial likelihood of success on the merits of its claim. Specifically, it asserts that the MTA’s failure to perform an independent appraisal pursuant to Public Authorities Law § 2897 (3) is fatal to the RFP process. It maintains that, although Zukerman of NGKF purportedly gave petitioner an appraised value of the Apartment, the appraisal could not have been independent since NGKF was the MTA’s leasing agent and thus “had to know what rent [petitioner was paying and that its estimate of value was less than [petitioner’s rent.” (Petitioner’s mem of law at 14.)
Petitioner also argues that, although the RFP required that the Apartment be used as a “high quality cocktail bar” (exhibit *290 2 to petition at 15 of 39), GG Campbell sought to make it “sleek and glitzy,” and thus the MTA violated its obligation to treat all bidders fairly pursuant to Public Authorities Law § 2897 (6).
Additionally, petitioner asserts that it would suffer irreparable harm if forced to vacate the Apartment since, as a losing bidder, it cannot recover pecuniary damages. It further asserts that such irreparable harm would arise from its having to fire numerous employees and relocate furnishings, inventory and other property, and from the loss of its reputation.
Petitioner further claims that it is entitled to a preliminary injunction because the balance of the equities weighs in its favor. Specifically, it maintains that its management, operation and marketing skills have made the Apartment what it is today and that the MTA will not sustain any substantial financial' impact if petitioner remains in possession of the Apartment pending the outcome of this proceeding.
In opposition to the motion, the MTA argues that petitioner is not entitled to a preliminary injunction. First, it asserts that petitioner failed to establish a likelihood of success on the merits because it did not show that the MTA failed to obtain an independent appraisal, that the RFP process was unfair, or that the MTA’s selection of GG Campbell was arbitrary and capricious.
The MTA contends that the appraisal it obtained from Zukerman, a licensed real estate broker employed by NGKF, complied with Public Authorities Law § 2897 (3) because Executive Law § 160-b (2) specifically allows one who is not a licensed appraiser to appraise real estate, and that it complied with MTA regulations, which provide fhat an appraisal “may be prepared by a licensed real estate broker experienced in the leasing of space in the area where the subject property is located.” (Exhibit B to Marshall aff at 28.) It further asserts that, although the Public Authorities Law does not define the • term “independent,” the American Heritage Dictionary of the English Language (New Coll, ed 1980) defines the word as “[f]ree from influence, guidance, or control of another or others” and that Zukerman estimated the value of the Apartment without the guidance or control ;of anyone from the MTA.
The MTA argues that its decision to award the lease to GG Campbell was fair. It maintains, inter alia, that petitioner’s contention that GG Campbell intends to operate the Apartment in a manner inconsistent with the terms of the RFP is unsupported by any proof. It further states that petitioner’s *291 contention that Zukerman estimated the rental value of the premises as less than petitioner was paying was incorrect, since Zukerman estimated it as $20,000 more than petitioner paid annually. In any event, maintains the MTA, petitioner does not assert that it relied on Zukerman’s estimate in preparing its response to the RFP.
Further, the MTA asserts that petitioner has not established that it would sustain irreparable injury in the absence of injunctive relief.
The MTA also maintains that a balance of the equities warrants the denial of petitioner’s demand for a preliminary injunction. It urges, inter alia, that it will lose a significant amount of rent if petitioner does not vacate the premises. If a preliminary injunction is granted, urges the MTA, then an undertaking must be given by petitioner pursuant to CPLR 6312 (b).
In her affidavit in opposition to petitioner’s motion, Nancy Marshall, Director of GCT Development for the MTA, acting by and through MNR, stated, inter alia, that Public Authorities Law § 2897 (3) allowed the MTA to lease property only after publicly advertising for bids and for not less than its “fair market value,” except in limited circumstances. (Marshall aff para 12.) Marshall conceded that
“when a public authority disposes of real property ... it must include in the record of the transaction ‘an appraisal of the value of such property’ made by ‘an independent appraiser.’ The purpose of this provision is to help ensure that the MTA is fulfilling its responsibility to the public by obtaining at least fair market value when it sells or leases out MTA property.” {Id. para 12.)[6]
Marshall represented that it was her understanding that NGKF was a licensed real estate broker. {Id. para 14.)
In response to Marshall’s affidavit, petitioner argues that the MTA failed to obtain an independent appraisal and that the purported appraisal performed by Zukerman was deficient. In support of these arguments, petitioner submits the affidavit *292 of Sharon Locatell, a state-certified appraiser with licenses in New York, New Jersey, and Connecticut, who opines that, since NGKF provides leasing services to the MTA in GCT, Zuker-man, an employee of the company, could not have provided the MTA with an independent appraisal within the ethical standards of the appraising profession. (Locatell aff paras 17-18.) Locatell further opines that Zukerman’s appraisal was deficient insofar as it failed to set forth the basis for his opinions. {Id. paras 19-21.)
Petitioner also asserts that the caption be amended to add GG Campbell in place of John Does 1 to 5, which had originally been named as the entities or persons originally selected by the MTA as the new lessee for the Apartment.
Petitioner argues that a new appraisal cannot salvage the. RFP process since such appraisal was not conducted prior to the “disposition” of the Apartment in accordance with Public' Authorities Law § 2897 (3). It further asserts that, since the MTA did not conduct an independent appraisal during the-“restricted period”[7] of the procurement process set forth in the Procurement Lobbying Law (PLL), and State Finance Law §§ 139-j and 139-k, the RFP must be invalidated. Petitioner maintains that, if a new appraisal salvages the RFP, then the MTA does not ever need to comply with Public Authorities Law § 2897 (3) unless it is sued. Petitioner also argues that Public Authorities Law § 2897 (7) makes it clear that an appraisal is required before the disposition of real property since it sets forth an elaborate set of preconditions which must be met before such a transfer can occur.
In its supplemental memorandum of law, GG Campbell argues[8] that, whatever merit petitioner’s claims may have, the remedy for the MTA’s failure to obtain an independent appraisal is not petitioner’s continued possession of the Apartment. This, urges GG Campbell, is because, pursuant to Public Authorities Law § 2897 (5), it is a “bona fide grantee or ‘ transferee [which] has given valuable consideration” for the lease, i.e., a security deposit, and “there is no allegation that *293 [it] received notice of the [MTA’s] lack of compliance with the provisions of the applicable laws concerning the disposal of public authority property.” (GG Campbell’s supp mem of law at 5.) Specifically, GG Campbell asserts that, since the petition contains no allegation that it had any knowledge prior to closing of any defect with the RFP process or that it knew prior to the execution of the lease that the MTA failed to obtain an independent appraisal, there is conclusive evidence that it complied with the Public Authorities Law.
GG Campbell further asserts that, since petitioner agreed in the terms of its month-to-month tenancy to vacate the Apartment upon 30 days’ written notice, without any restrictions, it is equitably estopped from asserting otherwise upon this application.
In its memorandum of law in opposition, the MTA argues that it performed an independent appraisal because NGKF’s agents were capable of performing appraisals and were permitted to do so pursuant to the MTA’s regulations; Executive Law § 160-b (2) permits individuals who are not state-certified or licensed real estate appraisers to conduct appraisals; written appraisals are not required by the Public Authorities Law; and NGKF’s appraisal was independent. The MTA further asserts that the RFP process was not arbitrary and capricious and was not unfair to petitioner as an incumbent tenant. The MTA further asserts that the petition is untimely since the RFP was issued on October 15, 2015, the four-month statute of limitations to object thereto expired on February 15, 2016, and the petition was not filed until April of 2016.
In a supplemental memorandum of law, the MTA argues that, if this court deems NGKF’s appraisal deficient, then it should require the MTA to obtain a proper appraisal but not prevent a transfer of the Apartment or direct a new RFP to be conducted. The MTA maintains that no authority prevents it from obtaining an additional appraisal at this time since there has not yet been a disposition of the Apartment. The MTA urges that, if the new independent appraisal results in a fair market value lower than what GG Campbell offered it, then the MTA should be free to transfer possession to GG Campbell. If the new appraisal results in a fair market value higher than what GG Campbell offered the MTA, then the MTA argues that it can (1) negotiate with one or more of the proposers for a higher rent that equals or exceeds the appraiser’s estimate of value; (2) conduct a new RFP; and (3) determine, if warranted, that the appraiser’s estimate of value overstates that fair market value.
*294 In its reply memorandum of law, petitioner asserts that the lease and entire RFP process must be annulled. Petitioner further asserts that, since (1) the Apartment was not transferred to GG Campbell; (2) that entity did not give valuable consideration for the lease; and (3) the latter failed to present evidence that it did not have constructive or actual notice of the MTA’s failure to comply with Public Authorities Law § 2897 (3), it cannot rely on Public Authorities Law § 2897 (5). It further asserts that, since no respondent will suffer immediate damages in the event a preliminary injunction is granted, it need not post an undertaking.
In its memorandum of law in reply to respondents’ answers, petitioner argues that the MTA’s award of the lease to GG Campbell was arbitrary and capricious since it failed to consider the substantial investment petitioner had made in the premises. Petitioner further asserts that the RFP was improperly conducted since the MTA failed to maintain a procurement record as required by Public Authorities Law § 2897 (3). It also maintains that its article 78 petition was timely since it was commenced on April 6, 2016, within four months of the MTA’s February 22, 2016 denial of its protest letter.
In its supplemental reply memorandum of law, GG Campbell asserts that this court should not annul the RFP process since Public Authorities Law § 2896 (1) authorizes the MTA to adopt guidelines regarding the disposal of property which do not prohibit the MTA from issuing an. award prior to obtaining an independent appraisal.
In a reply memorandum of law, the MTA argues that petitioner has no basis for preventing the MTA from terminating petitioner’s month-to-month tenancy. The MTA also asserts that, since possession has not yet been transferred to GG Campbell, the restricted period set forth in the PLL is ir-revelant and the RFP can be salvaged by an independent appraisal. The MTA adds that, since it will not transfer possession of the Apartment for less than fair market value, Public Authorities Law § 2897 (7) does not apply herein.
Gerber Group Limited Partnership and Gerber Group argue that they are entitled to dismissal of the petition (motion sequence No. 002) since they are not signatories to the lease and are not government entities and are thus improper parties herein. They also move for sanctions on the ground that the claims against them are frivolous.
Petitioner opposes the motion ón the ground that Gerber Group Limited Partnership and Gerber Group have an interest *295 in the outcome of this proceeding and there is no basis for the imposition of sanctions.
Conclusions of Law
Timeliness
Petitioner commenced this proceeding in a timely fashion. Bergen submitted a formal protest to the MTA on February 5, 2016. (Exhibit 6 to petition.) The protest was denied on February 22, 2016. (Exhibit 8 to petition.) The petition was filed on or about April 6, 2016, well within the four-month statute of limitations for article 78 proceedings. (See CPLR 217 [1].) Thus, the MTA’s contention that the petition is untimely is without merit.
Amendment of the Caption
Although petitioner requests that the caption be amended to name GG Campbell, LLC in place of John Does 1 to 5 in the caption, it did not make a formal motion for this relief. (See CPLR 2214.) However, because GG Campbell appeared by counsel in court, served an answer, and submitted motion papers, this court may amend the caption sua sponte to substitute GG Campbell, LLC for John Does 1 to 5 and this will not result in prejudice to respondents. (See Westchester Med. Ctr. v Amoroso, 110 AD3d 580, 581 [1st Dept 2013]; Suarez v Shorehaven Homeowners Assn., 202 AD2d 229, 231 [1st Dept 1994].)
The MTA’s Failure to Obtain an Independent Appraisal
Petitioner has established that the MTA failed to conduct an appraisal by an “independent appraiser” as required by Public Authorities Law § 2897 (3). Public Authorities Law § 2897, entitled “Disposal of public authority property,” provides, in pertinent part, as follows:
“3. Method of disposition. Subject to section twenty-eight hundred ninety-six of this title, any public authority may dispose of property for not less than the fair market value of such property by sale, exchange, or transfer, for cash, credit, or other property, with or without warranty, and upon such other terms and conditions as the contracting officer deems proper, and it may execute such documents for the transfer of title or other interest in property and take such other action as it deems necessary or proper to dispose of such property under the provisions of this section. Provided, *296 however, that no disposition of real property, or any interest in real property, shall be made unless an appraisal of the value of such property has been made by an independent appraiser and included in the record of the transaction, and, provided further, that no disposition of any other property, which because of its unique nature or the unique circumstances of the proposed transaction is not readily valued by reference to an active market for similar property, shall be made without a similar appraisal. . . .
“5. Validity of deed, bill of sale, lease, or other instrument. A deed, bill of sale, lease, or other instrument executed by or on behalf of any public authority, purporting to transfer title or any other interest in property of a public authority under this title shall be conclusive evidence of compliance with the provisions of this title insofar as concerns title or other interest of any bona fide grantee or transferee who has given valuable consideration for such title or other interest and has not received actual or constructive notice of lack of such compliance prior to the closing.
“6. Bids for disposal; advertising; procedure; disposal by negotiation; explanatory statement. . . .
“b. Whenever public advertising for bids is required under paragraph a of this subdivision:
“(iii) the award shall be made with reasonable promptness by notice to the responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the state, price and other factors considered; provided, that all bids may be rejected when it is in the public interest to do so.
“7. Disposal of property for less than fair market value.
“a. No asset owned, leased or otherwise in the control of a public authority may be sold, leased, or otherwise alienated for less than its fair market value except if: . . .
“(iii) in the event a public authority seeks to transfer an asset for less than its fair market value to other than a governmental entity, which disposal would not be consistent with the authority’s mis *297 sion, purpose or governing statutes, such authority shall provide written notification thereof to the governor, the speaker of the assembly, and the temporary president of the senate, and such proposed transfer shall be subject to denial by the governor, the senate, or the assembly.”
The purpose of Public Authorities Law § 2897, added to the Public Authorities Law as part of the Public Authorities Accountability Act of 2005,[9] was to:
1. ensure greater efficiency, openness and accountability for our State’s public authorities by codifying certain model governance principles;
2. remove legal impediments which prevented the full implementation of model governance principles by public authorities;
3. establish new public authorities within the executive department to provide additional oversight and ensure full compliance with the said model governance principles; and
4. allow for the creation of an independent inspector general to ensure for accountability for authority-related activities and operations. (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 766 at 4.)
The legislation was also intended to require, inter alia, that “all property dispositions by a public authority be for fair market value.” (Comptroller Mem in Support, Bill Jacket, L 2005, ch 766 at 18.)
Here, it is evident that the purported appraisal conducted by Zukerman was not “made by an independent appraiser and included in the record of the transaction.” (Public Authorities Law § 2897 [3].) Since the statute does not define the term “independent,” it should be construed in accordance with its everyday meaning. (See Matter of Rossi v New York City Dept. of Parks & Recreation, 127 AD3d 463, 464 [1st Dept 2015], citing Matter of New York Skyline, Inc. v City of New York, 94 AD3d 23, 27 [1st Dept 2012], lv denied 19 NY3d 809 [2012].) Ironically, the MTA, in asserting that Zukerman was “indepen *298 dent,” cites the definition of that word as set forth in the American Heritage Dictionary of the English Language (New Coll ed 1980): “[f]ree from influence, guidance, or control of another or others.”
Although the MTA states in conclusory fashion that Zuker-man’s estimate of the rental value of the Apartment was not influenced by NGKF’s relationship with the MTA, it is difficult to imagine that Zukerman, an employee of NGKF, the leasing agent for the MTA at GCT (exhibit 2 to petition at 8; exhibit D to Marshall aff, art 26 at 58), could be completely independent. In the MTA’s RFP, the section entitled “Procedures for Evaluation of Proposals” states, inter alia, that “proposals received from prospective tenants shall be independently evaluated by Williams Jackson Ewing and Jones Lang LaSalle or such other consultants as may from time to time be retained by the MTA to provide leasing and retail property management services at GCT’ (exhibit 2 to petition at 34 [emphasis added]). Since NGKF provided leasing services for the MTA at GCT, it was in a position to review competing bids in a situation where it had provided an appraisal.
Although there is no indication that NGKF actually reviewed competing bids in connection with the RFP, it is clear that its employee, Zukerman, provided a purported appraisal of the Apartment to all bidders. (Exhibits 8, 9 to petition.) He thus became inextricably intertwined in the RFP process which, had he actually been an independent appraiser, he never would have done. By engaging in the MTA’s RFP process, as well as in its rental process, he undermined the intent of the Public Authorities Law which, as noted above, seeks to promote, inter alia, “greater efficiency, openness and accountability” on the part of public authorities. (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 766 at 4.) Zukerman’s actions on behalf of the MTA give rise, at a minimum, to the appearance of impropriety.
Indeed, in her affidavit in support of petitioner’s application, Locatell, a licensed appraiser, opined that, under the circumstances of this matter, Zukerman could not have provided the MTA with an independent appraisal within the ethical standards of the appraising profession. (Locatell aff paras 17-18.)[10] Locatell further opined that Zukerman’s appraisal was deficient insofar as it failed to set forth the basis for his *299 opinions. (Id. paras 19-21.) This court finds that the recognition of Zukerman’s appraisal as one which meets the standards of Public Authorities Law § 2897 (3) would contravene the legislative intent of, inter alia, transparency and ensuring that the lease was disposed of for fair market value.[11] In light of the foregoing, and for the reasons set forth in greater detail below, the MTA is directed to conduct an independent appraisal within 45 days of the date of this order and to report back to this court on the results thereof.
Although GG Campbell argues that it does not need to conduct an independent appraisal because it is a “bona fide grantee or transferee who has given valuable consideration [for the lease] and [did not receive] actual or constructive notice of [the] lack of [the MTA’s failure to conduct an independent appraisal] prior to the closing” (Public Authorities Law § 2897 [5]), this claim is without merit. GG Campbell executed the lease on March 31, 2016. (Exhibit D to Marshall aff; Marshall aff para 18; Gerber aff para 1.) The lease was delivered to GG Campbell on April 5, 2016. (Exhibit 17 to Bergen reply aff.) The lease provided that the commencement date was “indeterminate” and that possession of the Apartment and a specific commencement date were contingent upon the MTA’s ability to grant possession or upon approval by the MTA of GG Campbell’s plans for its proposed improvements to the Apartment. (Exhibit D to Marshall aff, arts 3.1-3.2, 6.6 [a], [b] at 12, 22.) Since GG Campbell has not taken possession of the Apartment,[12] and it has not established, or even attempted to establish that it has met the other conditions required to trigger the commencement of the lease term, it cannot be considered a transferee, and thus Public Authorities Law § 2897 (5) does not apply in this situation.[13]
The MTA’s argument that it is permitted, pursuant to Public Authorities Law § 2896 (1), to enact its own guidelines allowing it to dispose of property without an independent appraisal *300 is also without merit. While that section indeed allows the MTA to enact its own guidelines for the disposal of property, they must be at least as stringent as those set forth in the Public Authorities Law. Thus, the MTA cannot circumvent the independent appraisal requirement.
This court does not agree with petitioner’s argument that the RFP process should be annulled as arbitrary and capricious because the selection of GG Campbell was based on criteria not mentioned in, and contrary to, the RFP, other bidders had access to information regarding rent it had been pay-' ing, and petitioner had a right to review the procurement record developed in connection with the RFP.
First, petitioner argues that, although the RFP required that the Apartment be used as a “high quality cocktail bar” (exhibit 2 to petition at 15 of 39), GG Campbell sought to make it “sleek and glitzy,” and thus the MTA violated its obligation to treat all bidders fairly pursuant to Public Authorities Law § 2897 (6). This contention is based on nothing more than sheer speculation, as petitioner is merely assuming that GG Campbell will seek to apply the allegedly sleek style it uses in its hotel bars to the Apartment.
Petitioner’s arguments regarding perceived unfairness in the bidding process are also without merit. Bergen conceded in a memorandum written to the MTA after he learned that the petitioner did not win the bid for the Apartment that “[a]n RFP issued by any government agency for leasehold space is inherently unfair to the incumbent [leaseholder]. This is. primarily because the incumbent’s costs and expenses are generally a matter of public record while the competitors’ are not.” (Exhibit 6 to petition.) He further conceded that he understood that “fairness [was] not a critical value to a government entity when compared with the need to maximize revenue.” (Id.)
Petitioner cites no authority for the proposition that the MTA must provide it with the entire procurement record developed in connection with the RFP. No such requirement is written into Public Authorities Law § 2897 (3). In any event, petitioner has not formally moved to compel the production of the same.' (See CPLR 2214.)
Finally, petitioner maintains that the RFP process was unfair since the MTA failed to take into consideration the $2.5 million in improvements which it spent when it was originally awarded the lease for the Apartment. However, as the MTA asserts, *301 relying on Trieste Group, LLC v Ark Fifth Ave. Corp. (13 AD3d 207 [1st Dept 2004]), those improvements have been amortized and depreciated since petitioner was awarded the lease for the Apartment 19 years ago, in 1997.[14]
Petitioner’s Request for a Preliminary Injunction
“A preliminary injunction substantially limits a defendant’s rights and is thus an extraordinary provisional remedy requiring a special showing. Accordingly, a preliminary injunction will only be granted when the party seeking such relief demonstrates a likelihood of ultimate success on the merits, irreparable injury if the preliminary injunction is withheld, and a balance of equities tipping in favor of the moving party.” (1234 Broadway LLC v West Side SRO Law Project, Goddard Riverside Community Ctr., 86 AD3d 18, 23 [1st Dept 2011] [citation omitted].)
In determining whether a party has established its entitlement to a preliminary injunction, a court may compensate for weaknesses in one of the foregoing elements by stressing the strength of another. (Schlosser v United Presbyt. Home at Syosset, 56 AD2d 615 [2d Dept 1977].)
Here, petitioner has established its entitlement to a preliminary injunction. First, it has shown a substantial likelihood of success on the merits. Specifically, as discussed in detail above, petitioner has shown that the MTA failed to conduct an independent appraisal in accordance with Public Authorities Law § 2897 (3).
In order to establish irreparable harm, petitioner must show that it cannot be compensated by money damages. (See U.S. Re Cos., Inc. v Scheerer, 41 AD3d 152, 155 [1st Dept 2007].) Petitioner may sustain harm to its reputation if the lease to the Apartment is awarded to another bidder. However, it is by no means certain that petitioner will suffer irreparable harm since, if a new RFP needs to be issued, then petitioner would have the opportunity to rebid for the lease. Contrary to its contention, no irreparable harm would arise from it having to fire numerous employees, as it would be the employees who *302 would suffer the harm. Petitioner’s need to relocate furnishings, inventory and other property can be measured in monetary damages and thus does not constitute irreparable harm.
The balance of the equities weigh in petitioner’s favor since it has operated the Apartment since 1999 and, through its investment of time and labor, has built a world famous reputation for the establishment.
Viewing the foregoing factors in their totality, and weighing most heavily the significance of the MTA’s failure to conduct an independent appraisal, this court finds that petitioner is entitled to a preliminary injunction. However, this court limits the scope of the injunction to enjoining the MTA from leasing the Apartment to any bidder until an independent appraisal is conducted. As addressed below, the injunction does not affect the ability of the MTA to remove petitioner from the Apartment, even during the pendency of this proceeding.
Termination of Petitioner’s Month-to-Month Tenancy
Petitioner argues that it is entitled to a preliminary injunction maintaining the status quo, i.e., its tenancy in the Apartment, pending the outcome of this proceeding. However, it has failed to establish that it is entitled to such relief.
On February 12, 2015, petitioner executed an amendment to its lease for the Apartment providing that it may remain in possession on a month-to-month basis. (Exhibit A to Marshall aff.) Petitioner conceded that the February 12, 2015 agreement provided that the MTA “may issue a notice to [pletitioner terminating the lease and requiring [petitioner to vacate the premises on 30 days’ notice.” (Grossich aff para 42; see also petitioner’s mem of law in support at 4; exhibit A to Marshall aff.)
Since the MTA asserts that it is entitled to remove petitioner from the Apartment upon 30 days’ written notice, and petitioner admits this fact, there is no basis upon which this court may prevent the MTA from serving petitioner with the 30-day notice. Indeed, as the MTA asserts, relying on Matter of Vintaco, Inc. v Metropolitan Transp. Auth. (2015 NY Slip Op 31459[U] [Sup Ct, NY County 2015, James, J.] [exhibit F to Marshall aff]), the issue of whether petitioner has a right to remain in possession of the Apartment as a month-to-month tenant is irrevelant to whether it is entitled to be awarded a new lease in the bidding process.
*303 Since the MTA is entitled- to serve petitioner with a 30-day notice to vacate, this court need not address the parties’ contentions regarding the amount of an undertaking to be posted by petitioner while it remains in the Apartment.
Performance of Independent Appraisal in Order to Salvage RFP
The factual history set forth above establishes that the MTA sent out an RFP and solicited bids for the Apartment. The winning bid, by GG Campbell, was for an annual rent of $1.1 million during the first year of the lease. (Marshall aff para 17.) The rent currently being paid by petitioner is $372,892.92. (Grossich aff para 4.) In its RFP, petitioner proposed a $750,000 annual rent during the first year of the lease. (Marshall aff at 17.) Given the foregoing, it would clearly serve the legislative intent of awarding the lease to the bidder with the offer “most advantageous to the state, price and other factors considered” (Public Authorities Law § 2897 [6] [b] [iii]), here, GG Campbell. However, as noted previously, such an award is not possible without an independent appraisal.
Although the parties strongly differ over whether an independent appraisal may be conducted at this time and, if so, whether such an independent appraisal can salvage the RFP process, no party has submitted any definitive authority supporting its respective position.
Public Authorities Law § 2897 (3) provides, inter alia, that “no disposition of real property, or any interest in real property, shall be made unless an appraisal of the value of such property has been made by an independent appraiser and included in the record of the transaction.” Public Authorities Law § 2895 (2) provides that “ ‘[d]ispose’ or 'disposal’ shall mean transfer of title or any other beneficial interest in personal or real property in accordance with [Public Authorities Law § 2897].” As discussed above, there has been no transfer of the Apartment to GG Campbell since the lease has not commenced and petitioner remains in possession thereof. Indeed, the MTA concedes that there has been no disposition of the premises. (MTA’s reply mem of law at 3-4.) Since there has been no “disposal” of any “beneficial interest” to GG Campbell, it is this court’s view that it is not too late to conduct an independent appraisal of the fair market rental value of the Apartment at *304 this time.[15] If the appraised fair market rent is lower than that offered by GG Campbell, then the lease will be awarded to GG Campbell. If the appraised fair market rent is higher than that offered by GG Campbell, then this court will deem the RFP process invalid and direct the MTA to commence a new RFP process.
This court notes that, in either of the above scenarios, a significant goal of the legislation, ensuring that the MTA obtains the bid “most advantageous to the state” (Public Authorities Law § 2897 [6] [b] [iii]), will be realized: either GG Campbell’s current bid is higher than what the independent appraisal shows the fair market value to be, or the RFP needs to be conducted again and there will presumably be a substantially increased floor for the bids of at least two of the offerors. Even Bergen conceded that “fairness [was] not a critical value to a government entity when compared with the need to maximize revenue.” (Exhibit 6 to petition.)
Petitioner cites D’Angelo v Cole (67 NY2d 65 [1986]) for the proposition that the MTA’s illegal act of failing to conduct an independent appraisal cannot be salvaged in part. In that case, the Court of Appeals held a village ordinance unconstitutional to the extent that a village could not recover the price of road improvement expenditures it made from a private road owner where the recoupment of such expenditures violated the General Municipal Law, which required a competitive bidding process. This, held the court, was because General Municipal Law former § 103 required projects over $5,000, such as the project in question in that matter, to be submitted to competitive bidding. The court held that where “competitive bidding is statutorily required, and the municipality fails to follow that procedure, the contract is completely, not partially, void” (id. at 70 [citations omitted]). In this case, however, competitive bidding was conducted, however imperfect. Although Zukerman’s appraisal was not independent, an independent appraisal conducted at this time may show that Zukerman’s appraisal was accurate or it may not. However, as noted above, if GG Campbell’s bid is higher than the independent appraisal value, then there will be compliance with the statute and the transaction can be consummated.
*305 Motion by Gerber Group Limited Partnership and Gerber Group to Dismiss
Gerber Group Limited Partnership and Gerber Group move to dismiss the petition on the ground that there is no basis for the claims asserted against them. Specifically, they assert that petitioner has no standing to bring an article 78 proceeding against them. In support of the motion, movants submit only a notice of motion and a memorandum of law in support. This motion is denied, since CPLR 2214 (b) specifically requires a motion to be served with “supporting affidavits.”
Therefore, in light of the foregoing, it is hereby ordered and adjudged that the petition is granted in part, and respondents Metropolitan Transportation Authority and Metro-North Commuter Railroad are directed to conduct an independent appraisal of The Campbell Apartment pursuant to Public Authorities Law § 2897 (3) within 45 days of the date of service of this order with notice of entry; and it is further, ordered that, pending the outcome of this proceeding, respondents Metropolitan Transportation Authority and Metro-North Commuter Railroad are preliminarily enjoined from transferring possession of The Campbell Apartment, a bar located inside of Grand Central Terminal, which premises are the subject of this proceeding; and it is further, ordered that the down payment made by defendant GG Campbell, LLC towards the rent of The Campbell Apartment shall be placed by the Metropolitan Transportation Authority into an interest bearing escrow account pending the outcome of this proceeding; and it is further, ordered that the stay prohibiting respondents Metropolitan Transportation Authority and Metro-North Commuter Railroad from terminating the tenancy of petitioner The Campbell Apartment, Ltd. is vacated; and it is further, ordered that the caption is amended to read as follows:
[[Image here]]
In the Matter of the Application of THE CAMPBELL APARTMENT, LTD., Petitioner,
Index No. 100532/16
Pursuant to Article 78 of the CPLR, -against-METROPOLITAN TRANSPORTATION AUTHORITY, METRO-NORTH COMMUTER RAILROAD, THE GERBER GROUP LIMITED *306 PARTNERSHIP, THE GERBER GROUP and GG CAMPBELL, LLC,
Respondents.
[[Image here]]
and it is further ordered that the motion (motion sequence No. 002) by Gerber Group Limited Partnership and Gerber Group to dismiss the petition and for sanctions is denied.

. The Apartment, built as part of GCT, which opened in 1913, was the office of John W. Campbell, a close associate of William Vanderbilt, then chairman of the New York Central Railroad. (Grossich aff para 5.)

. Although the lease eventually executed was between the MTA and GG Campbell, LLC c/o Gerber Group (exhibit D to Marshall aff, art 1.1 [b]), GG Campbell, LLC was not initially named as a respondent in this proceeding. *285 Petitioner later requested in its motion papers that GG Campbell be substituted in the caption for John Does 1 to 5.

. This court notes that some of petitioner’s citations to exhibits do not match the numbering of the e-filed exhibits. The references herein are to the e-filed exhibits.

. As the MTA points out, since 2,615 x $150 per square foot = $392,250, Zukerman’s estimate represented approximately $20,000 more than petitioner was paying.

. Although Bergen represented in his letter of February 5, 2016 that he was counsel for Hospitality Holdings, Inc. (exhibit 6 to petition), the RFP was submitted in the name of petitioner The Campbell Apartment, Ltd. (Exhibit 3 to petition.)

. Marshall asserts that Zukerman’s $150 per square foot appraisal was not included in the RFP since it was “not for the benefit of the offerors.” (Marshall aff para 14.) However, Zukerman admits that he provided the $150 estimate to prospective offerors who requested the information, including petitioner and “a representative of [GG Campbell] known as The Gerber Group.” (Zukerman aff para 9.)

. The “restricted period” is that commencing with the earliest notice of the advertisement or solicitation of a RFP and ending with the award of the final contract and approval by the government entity. (See State Finance Law §§ 139-j [1] [f]; 139-k [1] [fl.)

. As noted previously, GG Campbell was not initially named as a party to this proceeding. Nevertheless, counsel for Gerber Group Limited Partnership and Gerber Group submitted an answer, as well as opposition papers, on behalf of GG Campbell.

. To say there is a paucity of case law regarding this statute would be a gross understatement. A Lexis search of the statute reveals one case, Matter of Montgomery v Metropolitan Transp. Auth. (25 Misc 3d 1241 [A], 2009 NY Slip Op 52539[U], *5 [Sup Ct, NY County 2009]), in which the court held that the MTA did not act arbitrarily or capriciously in adopting a resolution approving development rights to the Vanderbilt rail yards in Brooklyn. Importantly, the court stated in that decision that “compliance with [Public Authorities Law § 2897 (3)] is mandatory, not discretionary.”

. Although Zukerman, a licensed real estate salesperson (Zukerman aff para 1), was not an appraiser, he purported to act as one in this matter.

. Petitioner asserts that the bidding process is designed to “promote the public interest,” “avoid favoritism and corruption,” and advance the public interest by ensuring that the property is disposed for the “best value.” (Petitioner’s supp mem of law in support at 9.) An independent appraisal would certainly further these goals.

. The MTA concedes that possession has not been transferred to GG Campbell. (MTA’s reply mem of law at 4.)

. GG Campbell represented at oral argument that a security deposit it paid the MTA constituted “valuable consideration.” This court directs that the security deposit be placed in escrow pending the outcome of this proceeding.

. In Trieste Group, the improvements to the real property were mostly made three to five years before the initial lease term expired. Here, the initial 10-year lease commenced in 1997 and the Apartment opened for business in 1999, so the improvements appear to have been made at least 13 years before the expiration of the initial lease term and its extension.

. Although petitioner argues that it is too late to conduct an independent appraisal because the “restricted period” or “procurement process” has ended, nothing in Public Authorities Law § 2897 (3) or in the legislative history thereof substantiates this contention.